**IN RE SEALED CASE NO. 97–3112 (Sentencing Guidelines' "Substantial Assistance")**

**No. 97–3112.**

United States Court of Appeals, District of Columbia Circuit.

Argued En Banc Jan. 27, 1999.

Decided July 9, 1999.

**130**

A.J. Kramer, Federal Public Defender, argued the cause and filed the briefs for appellant.

John R. Fisher, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was Wilma A. Lewis, U.S. Attorney.

Before: EDWARDS, Chief Judge, and WALD, SILBERMAN, WILLIAMS, GINSBURG, SENTELLE, HENDERSON, RANDOLPH, ROGERS, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND, with whom all members of the court join.

Concurring opinion filed by Chief Judge EDWARDS and Circuit Judge TATEL.

Concurring opinion filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge HENDERSON.

GARLAND, Circuit Judge:

Under section 5K1.1 of the United States Sentencing Guidelines (U.S.S.G.), a district court may sentence a criminal defendant below the guideline range prescribed for the offense, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1, p.s. (1997).[1] This court was convened *en banc* to consider whether a district court also has authority under the Guidelines to depart from the applicable range when the government declines to file such a motion. We hold that it does not.

**I**

A district court is generally required to impose a criminal sentence from within the range prescribed by the Sentencing Guidelines. 18 U.S.C. § 3553(b). That range is calculated by identifying the guideline keyed to the defendant's offense conduct, applying certain specified adjustments, and coordinating the adjusted offense level with a criminal history category based on the defendant's prior criminal conduct. *See* U.S.S.G. § 1B1.1. Employing that analysis in this case, the district court calculated the applicable guideline range and sentenced defendant to forty months in prison, a point in the middle of the range.[2]

---

1. Unless otherwise indicated, all references are to the 1997 edition of the Sentencing Guidelines Manual, which is the edition governing defendant's case. *See* U.S.S.G. § 1B1.11, p.s. Because this case remains under seal, we recite only those facts necessary to frame the legal issues.

2. *See* 21 U.S.C. § 846. The district court initially sentenced defendant to 60 months imprisonment, the statutory minimum sentence for his offense (conspiracy to distribute and to possess with intent to distribute 500 grams or more of cocaine). *See* 21 U.S.C. § 841(b)(1)(B)(ii); 21 U.S.C. § 846. That

sentence was vacated and remanded by a panel of this court on the ground that defendant was eligible for treatment under the "safety valve" provision of the Sentencing Guidelines, U.S.S.G. § 5C1.2, which Congress added in 1994, *see* 18 U.S.C. § 3553(f). *In re Sealed Case (Sentencing Guidelines' "Safety Valve")*, 105 F.3d 1460 (D.C.Cir.1997). The safety valve provision requires district courts to disregard statutory minimum sentences, and instead to sentence pursuant to the Guidelines, when a defendant satisfies five indicators of reduced culpability. *Id.* Following remand, the district court applied an additional reduction applicable to safety valve

Under certain circumstances, a court may depart downward from the sentencing range generated by the Guidelines. *See* 18 U.S.C. § 3553(b). Defendant contended that assistance he rendered to the government in connection with the investigation of other offenders qualified him for a departure under Guidelines § 5K1.1. The government, however, declined to file a motion stating that defendant had provided substantial assistance. In accord with our decision in *United States v. Ortez*, 902 F.2d 61, 64 (D.C.Cir.1990), the district court held that such a motion was a "prerequisite to downward departure from a guidelines sentence for substantial assistance," and denied defendant's request.

In *In re Sealed Case (Sentencing Guidelines' "Substantial Assistance")*, 149 F.3d 1198 (D.C.Cir.1998), a panel of this court reversed. The panel acknowledged that our holding in *Ortez* barred a departure for substantial assistance in the absence of a government motion. In the panel's view, however, the Supreme Court effectively overruled *Ortez* in *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), leaving district courts free "to depart from the Guidelines based on a defendant's substantial assistance where circumstances take the case out of the relevant guideline heartland." 149 F.3d at 1204. Because the district court had concluded that it lacked authority to depart without a motion, the case was remanded for possible resentencing. *Id.* On November 3, 1998, we granted the government's suggestion for rehearing en banc,

and vacated the portion of the panel's opinion holding that departures for substantial assistance are available in the absence of a government motion.[3]

■ The question at issue here—whether a district court may depart without a motion under any circumstances—is a question of law which we effectively review de novo. *See United States v. Sun-Diamond Growers*, 138 F.3d 961, 975 (D.C.Cir. 1998) (citing *Koon*, 518 U.S. at 100, 116 S.Ct. 2035), *aff'd on other grounds*, —— U.S. ——, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). Applying that standard, we now reaffirm our prior holding in *Ortez* and affirm the judgment of the district court.

## II

■ Our analysis begins with the language of section 5K1.1, which reads, in relevant part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines." The question is whether the United States Sentencing Commission intended the phrase, "[u]pon motion of the government," to mean *only* upon motion of the government. In *Ortez*, and in five subsequent opinions issued prior to the Supreme Court's decision in *Koon*, we held that a government motion was a prerequisite for a substantial assistance departure.[4] Every

---

cases, *see* U.S.S.G. § 2D1.1(b)(6), recalculated defendant's guideline sentencing range, and sentenced him to the 40 months noted in the text.

3. We left (and leave) untouched the panel's rejection of defendant's alternative argument that section 5K1.1 is invalid because the Sentencing Commission issued it as a policy statement rather than a formal guideline. *See* 149 F.3d at 1200–01. Defendant's suggestion for rehearing on that issue was denied.

4. *See Ortez*, 902 F.2d at 64; *see also United States v. Dyce*, 91 F.3d 1462, 1470 (D.C.Cir. 1996) (holding a substantial assistance depar-

ture available "only where the Government certifies to the district court that the help received has been of sufficient value to warrant the departure"); *United States v. White*, 71 F.3d 920, 927 (D.C.Cir.1995) ("[I]n the absence of a government motion the district court has no authority to depart under section 5K1.1."); *United States v. Jones*, 58 F.3d 688, 691 (D.C.Cir.1995) (holding that "a motion of the Government is a prerequisite to the exercise of judicial discretion to depart below the Guideline range"); *United States v. Watson*, 57 F.3d 1093, 1096 (D.C.Cir.1995) (same); *United States v. Doe*, 934 F.2d 353, 355 (D.C.Cir.1991) (same).

other circuit to announce a holding on the issue reached the same conclusion,[5] and, as discussed below, the circuits have continued to adhere to that position since *Koon* was decided as well. *See infra* note 12.

■ To be sure, the language of section 5K1.1 is susceptible to more than one reading. Although the section clearly provides that *if* the government moves the court may depart, it does not necessarily compel the inverse proposition—that if the government does not move the court may not depart. The legal maxim *expressio unius est exclusio alterius* ("the mention of one thing implies the exclusion of another") is not always correct. Rather, as we recently noted, "[t]he maxim's force in particular situations depends entirely on context, whether or not the draftsmen's mention of one thing, like a grant of authority, does really necessarily, or at least reasonably, imply the preclusion of alternatives." *Shook v. D.C. Fin. Responsibility & Management Assistance Auth.*, 132 F.3d 775, 782 (D.C.Cir.1998).

In the present context, however, it is clear that by authorizing departures with government motions, the Commission did intend to preclude departures without motions. This is clear because the Commission borrowed the phrasing of section 5K1.1 from two other provisions whose preclusive meaning is well-established, and which in turn borrowed from a tradition of similar statutory provisos that have been interpreted in the same way.

The Commission's authority to promulgate section 5K1.1 arises from Congress' instruction, in 28 U.S.C. § 994(n), that the Commission "assure that the guidelines reflect the appropriateness of imposing a lower sentence than would otherwise be imposed ... to take into account a defendant's substantial assistance...." Notably, Congress did not require the Commission to include an "upon motion of the government" proviso for guideline departures based on substantial assistance. *See Melendez v. United States*, 518 U.S. 120, 125 n. 3, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996). The Commission had the discretionary authority to do so, however, and did not have far to look for appropriate models.[6]

5. *See United States v. Reina*, 905 F.2d 638, 641 (2d Cir.1990); *United States v. Higgins*, 967 F.2d 841, 845 (3d Cir.1992); *United States v. Wade*, 936 F.2d 169, 171 (4th Cir. 1991); *United States v. Levy*, 904 F.2d 1026, 1035 (6th Cir.1990); *United States v. Goroza*, 941 F.2d 905, 908–09 (9th Cir.1991); *United States v. Lee*, 989 F.2d 377, 379 (10th Cir. 1993); *United States v. Alamin*, 895 F.2d 1335, 1337 (11th Cir.1990). Although three circuits initially speculated in dicta that there might be an "egregious" case or "extraordinary" assistance exception to the motion requirement, *see United States v. Romolo*, 937 F.2d 20, 24–25 (1st Cir.1991); *United States v. White*, 869 F.2d 822, 829 (5th Cir.1989); *United States v. Justice*, 877 F.2d 664, 668–69 (8th Cir.1989), those circuits now appear to have narrowed that exception to cases involving unconstitutional motives or irrational or bad faith refusals to file by the government. *See United States v. Amparo*, 961 F.2d 288, 293–94 (1st Cir.1992); *United States v. Solis*, 169 F.3d 224, 227 (5th Cir.1999); *United States v. Kelly*, 18 F.3d 612, 617–18 (8th Cir. 1994). We reach a similar result in Parts IV and V *infra*.

6. Defendant argues that the language of 28 U.S.C. § 994(n), which requires the Commission to "assure that the guidelines reflect the *general* appropriateness of imposing a lower sentence" for defendants who provide substantial assistance to the government, compels the conclusion that section 5K1.1 cannot alone constitute adequate consideration of substantial assistance. Def. Supp. Br. at 11. But Congress did not direct the Commission to assure departures whenever a defendant provides substantial assistance. Rather, section 994(n) left it to the Commission to determine the "general appropriateness" of lesser sentences, and it was within the Commission's authority to conclude that lowering sentences for substantial assistance would only be appropriate upon government motion. As we previously said in rejecting the claim that section 5K1.1 conflicts with section 994(n), "[t]he fact that Congress itself drafted a substantial assistance provision containing a government motion requirement [18 U.S.C. § 3553(e) ]—located, as it so happens, immediately prior to section 994(n) in the original legislation—precludes any doubts as to the ·reasonableness of the Commission's inclusion

Section 994(n) was enacted as part of the Anti–Drug Abuse Act of 1986. Adjacent to that section in the Act were two other sentencing-departure provisions which, respectively, enacted 18 U.S.C. § 3553(e) and amended Rule 35(b) of the Federal Rules of Criminal Procedure.[7] Both included nearly identical "upon motion of the government" clauses, and it is thus apparent that in drafting section 5K1.1 the Commission intended that section to be read *in pari materia* with 18 U.S.C. § 3553(e) and Rule 35(b). *See United States v. Abuhouran,* 161 F.3d 206, 211 (3d Cir.1998) ("The Commission drew on the provision Congress itself enacted allowing courts to sentence below statutory mandatory minima based on substantial assistance if the government so moves."); *see also United States v. Doe,* 940 F.2d 199, 203 n. 7 (7th Cir.1991); *United States v. Romolo,* 937 F.2d 20, 23 (1st Cir.1991); *United States v. Doe,* 934 F.2d 353, 359 (D.C.Cir.1991).

Section 3553(e) governs the circumstances under which a district court may select a sentence below a mandatory minimum set by a congressional statute—as compared to section 5K1.1, which applies to the selection of a sentence below a Sentencing Commission guideline. Section 3553(e) states:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e). In *Melendez v. United States,* the Supreme Court interpreted section 3553(e) to "require[ ] a Government motion ... before the court may impose such a sentence." 518 U.S. at 125–26, 116 S.Ct. 2057 (1996). The Supreme Court's construction of language that is virtually identical to the language of section 5K1.1, and is adjacent to its authorizing provision, is powerful authority for the manner in which we should read section 5K1.1 itself.[8]

Rule 35(b) of the Federal Rules of Criminal Procedure governs the reduction of a defendant's sentence for substantial assistance provided after the initial sentence was imposed. After the 1986 amendment, the Rule read:

The court, on motion of the Government, may within one year after the imposition of a sentence, lower a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

Fed.R.Crim.P. 35(b)(1987).[9] As with section 3553(e), courts have interpreted Rule

---

of such a requirement in section 5K1.1." *Doe,* 934 F.2d at 359 (D.C.Cir.).

7. *See* Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, tit. I, subtit. A, § 1008, 100 Stat. 3207, 3207–7 (1986) (codified at 28 U.S.C. § 994(n)); *id.* § 1007(a), 100 Stat. at 3207–7 (codified at 18 U.S.C. § 3553(e)); *id.* § 1009(a), 100 Stat. at 3207–8 (amending Fed.R.Crim.P. 35(b)).

8. Defendant attaches some significance to the fact that section 3553(e) provides that upon motion a court shall have "authority" to impose a sentence below the statutory minimum, while section 5K1.1 provides that upon

motion a court "may" depart from the Guidelines. This truly is a distinction without a difference. *Compare* BLACK'S LAW DICTIONARY 132 (6th ed.1990) (defining "authority" as "permission"), *with id.* at 979 (defining "may" as expressing "permission").

9. The provision permitting a reduction for substantial assistance, including the phrase "on motion of the government," was added to Rule 35 by the Sentencing Reform Act of 1984, Pub.L. No. 98–473, tit. II, § 215(b), 98 Stat. 1837, 2016 (1984). The 1986 amendment brought the Rule to the form quoted in text. Following amendments made in 1998, Rule 35(b) now reads in pertinent part: "If

35(b) as requiring a motion before a judge may depart. *See, e.g., Doe,* 940 F.2d at 202 (7th Cir.) (holding that "a Government motion is required to trigger the current Rule 35(b)"); *United States v. Lewis,* 896 F.2d 246, 248 (7th Cir.1990) (same).

Moreover, sections 5K1.1 and 3553(e), and Rule 35(b), are part of a congressional tradition of placing similar provisos in statutes that implicate issues of prosecutorial discretion and judgment. For example, 18 U.S.C. § 6003(a) provides that, "upon the request of the United States attorney for such district," a district court shall issue an order compelling the immunized testimony of a witness who refuses to testify. Likewise, the Ethics in Government Act provides that, "[u]pon receipt of an application" from the Attorney General, a special division of this court shall appoint an independent counsel. 28 U.S.C. § 593(b)(1). As with section 3553(e) and Rule 35(b), these statutes have been read to mean that courts may act *only* upon a request from the government. *See United States v. Doe,* 465 U.S. 605, 616–17, 104 S.Ct. 1237, 79 L.Ed.2d 552 (1984); *In re Kaminski,* 960 F.2d 1062, 1063 (D.C.Cir. Spec. Div.1992). In both cases, the courts adopted such readings in reliance upon a tradition of legislative and judicial deference to prosecutorial discretion in matters involving the investigation and prosecution of criminal cases.[10]

The process of evaluating the extent and significance of a defendant's "assistance in the investigation or prosecution of another person" falls well within this tradition.

*See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992) (noting that prosecutor's authority to seek a section 5K1.1 departure is comparable to "a prosecutor's other decisions"); *Abu-houran,* 161 F.3d at 215 (noting that without a motion requirement, "the court would need to inquire into the nature, credibility, and significance of the defendant's assistance.... [I]n doing so a court would be drawn into inappropriate scrutiny of prosecutorial decisionmaking."). As we have said before, "the government motion requirement is not a sinister impediment to a defendant's exercise of her substantive due process rights, but rather a practical device that allows the government to give appropriate weight to its investigative and enforcement activities...." *Doe,* 934 F.2d at 358 (D.C.Cir.). *See Wade,* 504 U.S. at 187, 112 S.Ct. 1840 ("The Government's decision not to move may have been based not on a failure to acknowledge or appreciate [the defendant's] help, but simply on its rational assessment of the cost and benefit that would flow from moving.") (citing *Doe,* 934 F.2d at 358 (D.C.Cir.)).[11] The point is not that courts are incapable of making such evaluations. Nor is it that letting them do so will always result in debilitating intrusions into core prosecutorial functions. It is simply that the "upon motion of the government" proviso falls squarely within a tradition of deferring to prosecutorial initiative in order to avert such a possibility, and that this tradition formed the backdrop for the Commission's drafting of section 5K1.1.

the Government so moves within one year after the sentence is imposed, the court may reduce a sentence to reflect a defendant's substantial assistance...." Fed.R.Crim.P. 35(b) (1999).

**10.** *See Doe,* 465 U.S. at 616, 104 S.Ct. 1237 ("The decision to seek use immunity necessarily involves a balancing of the Government's interests in obtaining information against the risk that immunity will frustrate the Government's attempts to prosecute the subject of the investigation."); *Kaminski,* 960 F.2d at 1064 (relying on Supreme Court precedent that "the executive branch has exclusive au-

thority and absolute discretion to decide whether to prosecute a case") (quoting *United States v. Nixon,* 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

**11.** *See also Doe,* 934 F.2d at 358 (D.C.Cir.) ("[T]he government motion provision of section 5K1.1 is predicated on the reasonable assumption that the government is best positioned to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance.") (internal quotation omitted).

Although the Supreme Court has interpreted the nearly identical language of section 3553(e) to require a government motion before a court may depart from a statutory minimum sentence, the Court has not yet ruled directly with respect to a departure from the Guidelines under section 5K1.1. In two cases, however, it has strongly suggested that a government motion is required under section 5K1.1 as well.

In *Wade v. United States,* 504 U.S. 181, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the defendant challenged the government's refusal to file a motion seeking a substantial assistance departure under both sections 5K1.1 and 3553(e). The Court held that the government's refusal to file such a motion is subject to judicial review, but only upon a substantial threshold showing that the prosecutor had an unconstitutional motive for refusing to file. Because the defendant conceded that the court could not depart without a motion, and merely challenged the government's refusal to file one, *Wade* does not decide the precise issue before us.

But *Wade*'s dicta in that direction could hardly have been stronger. For example, the Court described the "upon motion" clause of both section 3553(e) and section 5K1.1 as "the condition limiting the court's authority":

> Wade concedes, as a matter of statutory interpretation, that § 3553(e) imposes the condition of a Government motion upon the district court's authority to depart, and he does not argue otherwise with respect to § 5K1.1.... *Wade's position is consistent with the view, which we think is clearly correct, that in both § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty,* to file a motion when a defendant has substantially assisted.

504 U.S. at 185, 112 S.Ct. 1840 (internal citations omitted) (emphasis added). In like vein, the Court said, "although a showing of assistance is a necessary condition for relief, it is not a sufficient one." *Id.* at 187, 112 S.Ct. 1840. Indeed, there would have been little reason for the Court to decide whether the government's refusal to file a motion was subject to judicial review if the Court had believed such a motion was unnecessary to authorize a departure in the first place.

As noted above, the Court held in *Melendez v. United States,* 518 U.S. at 125–26, 116 S.Ct. 2057, that section 3553(e) requires a government motion before a court may depart below a statutory minimum. The issue in *Melendez* was whether a motion filed pursuant to section 5K1.1, requesting a departure below the Sentencing Guidelines, is sufficient to permit the court to depart below the statutory minimum as well. The court held that it is not, and that a motion requesting a departure below the statutory minimum also is required. Again, the precise question here was not at issue there, since the government had filed a section 5K1.1 motion on Melendez's behalf. But the Court did repeat *Wade*'s dictum, which *Wade* had applied to both sections 3553(e) and 5K1.1, that "substantial assistance 'is a necessary condition for [a departure, but] it is not a sufficient one.' " 518 U.S. at 126 n. 4, 116 S.Ct. 2057 (quoting *Wade,* 504 U.S. at 187, 112 S.Ct. 1840) (alteration in original). And although Justices O'Connor and Breyer dissented in part, they did not dispute that dictum. To the contrary, they were even more explicit than the majority, stating flatly that section 5K1.1 "permit[s] judges to depart downward for 'substantial assistance' *only if* the Government makes a 'motion'...." *Id.* at 133, 116 S.Ct. 2057 (Breyer, J., joined by O'Connor, J., concurring in part and dissenting in part) (emphasis added).

Because the Sentencing Commission has not issued an interpretation of the meaning of section 5K1.1, there is no administrative construction to which we may defer. *Cf. Stinson v. United States,* 508 U.S. 36, 44–46, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Our task, then, is to decide upon

the best reading of section 5K1.1's language. That task is not difficult, given the Supreme Court's interpretation of the virtually identical language of section 3553(e), the drafting history suggesting a Commission intention that section 5K1.1 be read *in pari materia* with that statute (and with Rule 35(b)), the accepted interpretation of similar language in other statutes, and strong Supreme Court dicta regarding the meaning of section 5K1.1 itself. These considerations compel us to conclude that a court may depart for substantial assistance only upon the filing of an appropriate motion by the government.

## III

In arguing that a district court may depart even in the absence of a government motion, the defendant contends that *Koon* wrought a transformation in the law so fundamental as to overrule our earlier decision in *Ortez* and, implicitly, to render inappropriate the kind of interpretative method employed above. No other circuit has adopted this view. To the contrary, in numerous post-*Koon* cases, the circuits have continued to rule that departures require government motions.[12] The Third Circuit has specifically addressed and rejected claims that *Koon* changed the substantial assistance landscape. *See Abuhouran*, 161 F.3d at 207–09. And while the Fifth Circuit initially adopted a position like that of defendant, *see United States v. Solis*, 161 F.3d 281 (5th Cir.1998), after we vacated our panel's decision it vacated its own as well, and held that *Koon* did not alter the requirement of a

government motion. *United States v. Solis*, 169 F.3d 224 (5th Cir.1999).

In this Part, we first set forth the Supreme Court's analysis in *Koon*, and then discuss the defendant's contentions and our own conclusions regarding the relevance of *Koon* to section 5K1.1.

### A

In *Koon*, the Supreme Court considered the standard of review applicable to a district court's decision to depart from a guideline sentencing range, and concluded that the appropriate standard was abuse of discretion. 518 U.S. at 98–99, 116 S.Ct. 2035. In the course of reaching that conclusion, the Court adopted a four-part taxonomy of grounds for departure originally suggested by then-Chief Judge Breyer in *United States v. Rivera*, 994 F.2d 942 (1st Cir.1993). According to this taxonomy, departure factors are classified as either: (1) forbidden, (2) encouraged, (3) discouraged, or (4) unmentioned. Because this taxonomy is at the heart of defendant's analysis of section 5K1.1, we consider it in some detail.

*Koon* began by noting that the authority of a district court to depart from the Guidelines derives from 18 U.S.C. § 3553(b), which permits departure if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." To determine "whether a circumstance was adequately taken into consideration by the Commission," the Court said, "Con-

12. *See, e.g., Abuhouran*, 161 F.3d at 211 (3d Cir.1998); *United States v. Schaefer*, 120 F.3d 505, 508 (4th Cir.1997); *Solis*, 169 F.3d at 226 (5th Cir.1999); *United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir.1998); *United States v. Carter*, 122 F.3d 469, 476 (7th Cir. 1997); *United States v. Barrett*, 173 F.3d 682, 684 (8th Cir.1999); *United States v. Mikaelian*, 168 F.3d 380, 385 (9th Cir.1999); *United States v. Cerrato–Reyes*, 176 F.3d 1253 at 1263–64 (10th Cir.1999); *United States v. Gonsalves*, 121 F.3d 1416, 1419 (11th Cir. 1997). In *United States v. Santoyo*, 146 F.3d

519 (7th Cir.1998), a panel of the Seventh Circuit considered a defendant's claim "that his assistance was so substantial that it justified a departure under § 5K2.0," even in the absence of a government motion. The court did not reject the legal theory behind the claim, but noted that it would require proof of assistance so unusual "as to take it out of the heartland of § 5K1.1 cases," and concluded that defendant's assistance was not of that caliber. *Santoyo*, 146 F.3d at 525–26. We address this legal theory in Part IV below.

gress instructed courts to 'consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission.'" 518 U.S. at 92–93, 116 S.Ct. 2035 (quoting § 3553(b)). "Turning [its] attention, as instructed, to the Guidelines Manual," the Court noted the Commission's statement that the Guidelines were formulated "to apply to a heartland of typical cases," and hence that "factors that may make a case atypical provide potential bases for departure." *Id.* at 93, 116 S.Ct. 2035.

*Koon* further noted, however, that "[s]entencing courts are not left adrift" as to which factors may be considered in making departures, and how such consideration should proceed. First, certain factors are "forbidden," and can never be used as bases for departure. *Id.* at 94–95, 116 S.Ct. 2035. Second, certain factors are "encouraged." These are factors the Commission was unable to take into account fully in formulating the Guidelines. If a factor is encouraged, "the court is authorized to depart if the applicable Guideline does not already take it into account." *Id.* If the applicable guideline already does take the encouraged factor into account, a court may still depart in reliance upon it, "but only if 'it is present to a degree substantially in excess of that which ordinarily is involved in the offense.'" *Id.* at 95, 116 S.Ct. 2035 (citing U.S.S.G. § 5K2.0, p.s.). Third, certain factors are "discouraged." Such factors are those "'not ordinarily relevant to determination of whether a sentence should be outside the applicable guideline range.'" *Id.* (quoting U.S.S.G. Ch. 5., Pt. H, intro. comment.). They may be used for departure "only if the factor is present to an exceptional degree." *Id.* at 96, 116 S.Ct. 2035.

Finally, under the *Koon* taxonomy, if a factor is neither forbidden, encouraged nor discouraged, it is "unmentioned." An unmentioned factor may be used as the basis for departure if "it is sufficient to take the case out of the [applicable] Guideline's

heartland"—i.e., the range of typical cases to which the guideline was meant to apply. *Id. Koon* cautioned, however, that "the Commission's expectation [was] that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'" *Id.* (quoting U.S.S.G. Ch. 1, Pt. A).

**B**

In applying the *Koon* taxonomy to the instant case, defendant begins with the proposition that the factor at issue here—which he describes as "substantial assistance without a government motion"—is not a forbidden factor. It is not forbidden, he contends, because nothing in the Sentencing Guidelines expressly prohibits departures in the absence of government motions. Although he regards "substantial assistance with a government motion" as an encouraged factor, he does not contend that assistance without a motion is also encouraged. He does, however, deny that it is discouraged, since, again, "the Guidelines nowhere expressly discourage departures based on 'substantial assistance without a government motion.'" Def. Supp. Br. at 10 (internal quotation omitted).

This leaves only the "unmentioned" category, which is where defendant places substantial assistance without a motion. *Koon,* he contends, requires that the Guidelines be interpreted precisely. If a factor has not been expressly mentioned, then it has not been adequately taken into account by the Commission. Because substantial assistance without a motion has not been expressly mentioned, defendant argues that like any other unmentioned factor it can be the basis of a departure where circumstances take the case out of the relevant guideline heartland. Thus, he concludes, *Koon* effectively overrules *Ortez.*

We approach with some skepticism the contention that *Koon* effectively overruled *Ortez,* and with it scores of cases in this and other circuits. Section 5K1.1 was neither at issue, nor mentioned, in the *Koon*

opinion. The Court decided *Melendez,* which repeated the dictum of *Wade,* just four days after deciding *Koon* and without any suggestion that a fundamental transformation in the meaning of section 5K1.1 had just occurred. Indeed, although *Melendez* was in large part about the meaning of section 3553(e), it was also about the meaning of section 5K1.1, yet the Court resolved the case without once mentioning *Koon. See* 518 U.S. at 130–31, 116 S.Ct. 2057.

Our general skepticism aside, we reject the defendant's proposed application of *Koon* to section 5K1.1 for two specific reasons. First, he misidentifies the departure factor at issue in this case, and hence misplaces the factor within the *Koon* taxonomy. Second, he incorrectly assumes that a "clear statement" canon governs the reading of the entire Guidelines Manual, and particularly of section 5K1.1.

■ The relevant departure factor here is neither "substantial assistance to authorities *without a government motion*" nor "substantial assistance to authorities *with a government motion.*" Rather, the appropriate characterization of the factor is the one the Commission itself used in titling section 5K1.1: "Substantial Assistance to Authorities," *simpliciter.* The government motion proviso is a procedural limitation upon the applicability of the factor, but it is not a defining aspect of the factor itself.[13]

As *Koon* explained, a departure factor is an "aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Commission." 518 U.S. at 106, 116 S.Ct.

2035 (quoting 18 U.S.C. § 3553(b)). In the case of a downward departure, the factor must, of course, be a "mitigating" one. But if, as defendant concedes, "substantial assistance *with* a government motion" is a factor the Commission did adequately take into consideration, the only thing that distinguishes the factor defendant contends is at issue here is the *absence* of a government motion. And we do not see why the unwillingness of the government to file a motion should itself be a basis for leniency. *Cf. Abuhouran,* 161 F.3d at 213 ("[T]he existence *vel non* of a government motion concerning assistance ... is not a sentencing factor. A sentencing factor is a relevant offense or offender characteristic.").

Once the factor actually at issue here is identified, its place in the *Koon* taxonomy becomes clear. Substantial assistance to authorities cannot be an unmentioned factor since it is specifically mentioned in section 5K1.1. Nor is it in any way telling, as the defendant contended at oral argument, that this factor was not included in the list of forbidden factors catalogued in *Koon. See* 518 U.S. at 93, 116 S.Ct. 2035 (listing, *inter alia,* race, sex, and economic hardship as forbidden factors).[14] *Koon* did not list substantial assistance as a forbidden factor because it is not one; section 5K1.1 specifically contemplates that it may be used as a ground for departure. Rather, substantial assistance is an encouraged factor and, like the other encouraged factors, the Guidelines provide that a court "may" depart when it is present. *Compare* U.S.S.G. § 5K1.1, p.s., *with* § 5K2.10, p.s. (court "may" depart based on victim conduct), *and* § 5K2.13, p.s. (court "may" depart based on defendant's diminished

---

13. *See Abuhouran,* 161 F.3d at 213 ("The requirement of a government motion under § 5K1.1 is a *condition* limiting a court's authority to grant a defendant a substantial assistance departure.... and simply cannot be described as a 'sentencing factor.' ... Rather, the factor ... is [defendant's] alleged substantial assistance to the government.") (internal citations omitted).

14. Indeed, more telling is that *Koon's* list of forbidden factors omitted the one factor that is directly related to assistance to authorities: *refusal* to assist authorities. *See* U.S.S.G. § 5K1.2, p.s. ("A defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor."). The Court's omission of this factor further supports the conclusion that the analysis in *Koon* has little applicability to departures for substantial assistance.

mental capacity). There is, therefore, no warrant for treating substantial assistance as an unmentioned factor within the *Koon* taxonomy.

This is not to deny that substantial assistance remains unlike the other departure factors discussed in *Koon*. It is the only one that comes with a procedural limitation—the motion requirement discussed above.[15] But it is hardly surprising that the Guidelines should treat this factor differently from the others. It is the only factor Congress permitted as a basis for departures below a statutory minimum, *see* 18 U.S.C. § 3553(e); the only factor Congress specifically directed the Commission to address for guideline departures, *see* 28 U.S.C. § 994(n); and the only factor to which the Commission devoted a separate subpart in the Guidelines Manual, *compare* U.S.S.G. Ch. 5, Pt. K(1) ("Substantial Assistance to Authorities"), *with id.* Pt. K(2) ("Other Grounds for Departure"). And since substantial assistance was not at issue in *Koon*, it is not surprising that the Court did not address its unique place in the taxonomy.

█ Our second disagreement with defendant is with his underlying assumption that, post-*Koon*, a "clear statement" canon governs every aspect of the Guidelines Manual. He urges us to permit departures without motions because the Guidelines "nowhere *expressly* address 'substantial assistance without a government motion.'" Def. Supp. Br. at 10 (citation omitted) (emphasis added). The emphasized word, however, is not to be found in *Koon* itself, and certainly not in *Melendez* which was decided just four days later. *See Melendez*, 518 U.S. at 129, 116 S.Ct. 2057 ("Although the various relevant guidelines provisions could certainly be clearer, we also believe that the government's interpretation of the current provisions is the better one."). Indeed, *Koon*

itself said that "an impermissible factor need not be invoked by name to be rejected." *Koon*, 518 U.S. at 110, 116 S.Ct. 2035.

It is true that in *Koon*, the Court held that even though the Guidelines (in § 5H1.10) make socioeconomic status a forbidden factor, a defendant's job loss remains an unmentioned, permissible one. "[S]ocioeconomic status and job loss," the Court said, "are not the semantic or practical equivalents of each other." 518 U.S. at 110, 116 S.Ct. 2035. But whether or not "semantic equivalence" is the test for comparing a listed departure factor against an asserted one, *Koon* did not make it the test for determining whether a listed departure factor is limited by a procedural condition—let alone a universal rule for reading the Guidelines Manual as a whole.

Moreover, the reason the Supreme Court looked to semantic or practical equivalence in *Koon* was that it was a sensible way to determine whether the factors at issue there were sufficiently similar to indicate that the Commission's consideration of one meant it had also considered the other. In *Koon*, it was not hard to imagine that the Commission could have considered the relevance of a defendant's pre-offense socioeconomic status (which would go to the question of culpability), without at the same time considering the relevance of post-conviction job loss (which would go to the quite different question of collateral punishment). As the Court said, "the link is not so close." 518 U.S. at 110, 116 S.Ct. 2035. But here the link is quite close. "With a motion" and "without a motion" are not *equivalents* precisely because they are *opposites*. And we find it difficult to believe that the Commission could have so compartmentalized its thinking as to address directly the relevance of substantial assistance with a government motion, yet fail to take account of the

---

**15.** *See Schaefer*, 120 F.3d at 508 ("[A] departure under § 5K1.1, p.s. is different from the typical basis for departure.... Unlike all other grounds for departure, in order for a district court to base a departure upon a defendant's substantial assistance ... the Government must first move the district court to do so.").

opposite possibility that the government might not file a motion. To the contrary, we concluded in Part II that the Commission did affirmatively decide—consciously adopting the model of section 3553(e)—that substantial assistance without a motion does not qualify for a departure.[16] And we find nothing in *Koon* to suggest that the usual interpretive methods employed in that Part are inappropriate for reading section 5K1.1.[17]

## IV

■ In this Part, we consider defendant's additional argument that even if a court lacks authority to depart without a motion under section 5K1.1, it has an independent source of departure authority under Guidelines § 5K2.0. That section begins by stating:

> Under 18 U.S.C. § 3553(b), the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . .'

Subsequent sentences note that the Commission has identified certain factors that may warrant departure from the Guidelines, and discuss circumstances under which departures based on those factors, as well as additional factors, may be appropriate. Subsequent guideline sections identify eighteen such specific factors. U.S.S.G. §§ 5K2.1–5K2.18.

As the now-familiar language quoted above suggests, defendant's argument from section 5K2.0 is essentially the same argument we considered in Part III, dressed in not very different clothes. Section 3553(b), quoted in the first line of section 5K2.0, is the statutory source of authority for all departures. And the subsequent sentences of section 5K2.0 form part of the basis for the departure taxonomy the Court developed in *Koon*. But *Koon* did not suggest that section 5K2.0 was a source of authority for substantial assistance departures independent of section 5K1.1. Accordingly, defendant's specific reference to this section adds little to the argument rejected in Part III. Indeed, as defense counsel conceded at oral argument, if we read section 5K1.1 as saying that a substantial assistance departure is permissible *only* upon motion of the government, then we cannot read section 5K2.0 as countermanding that injunction. And as we have already read section 5K1.1 that way, and as we find nothing in section 5K2.0 to cast doubt on that reading, we conclude that section 5K2.0 does not provide an independent source of authority for substantial assistance departures.

This conclusion is strongly supported by the structure of the Guidelines Manual itself. Chapter 5, Part K of the Manual is entitled "Departures." Subpart 1 of Part K, which includes section 5K1.1, is entitled "Substantial Assistance to Authorities." Subpart 2, which begins with section 5K2.0 and follows with the eighteen specific departure-factor sections, is entitled "*Other*

16. For these reasons, even if the relevant factor here were "substantial assistance without a motion," we could not regard it as unmentioned, but instead would have to regard it as forbidden.

17. *Koon*'s own subsequent treatment of the job-loss factor further supports reliance on such methods. Although the Court concluded that consideration of job loss was not generally prohibited, it held such consideration was barred when the offense at issue was one like 18 U.S.C. § 242 (deprivation of rights under color of law). "It is to be expected that a

government official would be subject to" job loss for such an offense, the Court said, and "so we conclude these consequences were adequately considered by the Commission in formulating" the offense guideline applicable to section 242. *Koon*, 518 U.S. at 110–11, 116 S.Ct. 2035. The Court reached this conclusion, however, despite the absence of any reference *to job loss in the applicable offense* guideline, U.S.S.G. § 2H1.4 (1992), and without any other express evidence indicating the Commission actually had recognized what the Court thought was logically "to be expected."

Grounds for Departure."[18] This structure confirms the conclusion that it is section 5K1.1, and not section 5K2.0, that contains the Commission's guidance regarding departures based on substantial assistance. *See Solis,* 169 F.3d at 227 (holding that "a district court has no more authority to depart for substantial assistance under § 5K2.0 than it has under § 5K1.1"); *Abu-houran,* 161 F.3d at 213 (same).[19]

▉ Defendant briefly asserted a further, closely-related argument in his initial briefs, although he appeared to abandon it in his response to the petition for rehearing.[20] According to this argument, even if section 5K1.1 bars substantial assistance departures in the absence of a motion, that section—like other guideline sections—has

a "heartland" and section 5K2.0 permits a departure from it in an atypical case. That is, even if "ordinary" substantial assistance is not enough for a departure without a motion, extraordinary assistance could be.[21]

We rejected this argument prior to *Koon,*[22] and nothing in *Koon* suggests we should revive it now. *Koon* itself discussed departures from *offense* guidelines and adjustments, not departures from guidelines that themselves regulate departures. That is the general context in which the Guidelines Manual discusses departures as well,[23] and we have some doubt as to whether a "departure from a departure guideline" was contemplated by the Commission or even constitutes a coherent sentencing concept[24]

18. U.S.S.G. Ch. 5, Pt. K, Subpt. 2 (emphasis added). The title was the result of a deliberate choice on the part of the Commission. Subpart 2 was originally entitled "General Provisions," and was changed to "Other Grounds for Departure" as part of "editorial and clarifying" changes made in 1990. See U.S.S.G.App. C., amend. 358.

19. This conclusion is also supported by considering the implications of accepting defendant's argument. On that argument, it would be appropriate for a court to depart as long as substantial assistance were not adequately taken into account in formulating the "relevant guideline applicable to the particular offense" committed by the defendant. Def. Resp. to Pet. for Reh'g at 7. But as the Commission's promulgation of section 5K1.1 suggests, and as defense counsel conceded at oral argument, substantial assistance was not taken into account in drafting any of the offense guidelines. Hence, the logical consequence of defendant's theory is that a defendant's substantial assistance would take a case out of the heartland of every offense. This would both render the motion provision of section 5K1.1 essentially irrelevant, and contravene "the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.'" *Koon,* 518 U.S. at 96, 116 S.Ct. 2035 (quoting U.S.S.G. Ch. 1, Pt. A).

20. *Compare* Def. Br. at 37, *with* Def. Resp. to Pet. for Reh'g at 7. Defendant may have decided not to press this argument because he never contended that he provided an extraordinary level of assistance to the government.

21. *See supra* notes 5, 12 (citing cases discussing this theory).

22. *See White,* 71 F.3d at 928 ("[T]he circumstances surrounding a defendant's cooperation with the government can never be of a kind or degree not adequately contemplated by the Commission. 'Cooperation with the prosecutors simply cannot be sufficiently extraordinary to warrant a departure under § 5K2.0 absent a government motion under § 5K1.1.'") (quoting *United States v. Aslakson,* 982 F.2d 283, 284 (8th Cir.1992)).

23. *See, e.g.,* U.S.S.G. § 5K2.0, p.s. ("Where, for example, the applicable *offense* guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.") (emphasis added).

24. Of course, a factor denominated as "discouraged" under the *Koon* taxonomy may be used for departure "if the factor is present to an exceptional degree." *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. But to do so is not to "depart" from the relevant discouraged factor guideline, since such guidelines state that specified factors are not "ordinarily" relevant for departure—implying that under unusual circumstances they may be. *See, e.g.,* U.S.S.G. § 5H1.6, p.s. (family ties "not ordinarily relevant" for departure). The same is true for encouraged factors already taken into account by applicable offense guidelines. *See, e.g.,* U.S.S.G. § 5K2.7, p.s. (departure for disruption of governmental function "ordi-

We have no doubt, however, that even if otherwise appropriate, the departure-from-a-departure concept cannot apply to section 5K1.1. Nothing about section 5K1.1 suggests that its procedural bar is limited to "substantial but not extraordinary" assistance[25]—just as there is no such limitation upon the procedural bar of 18 U.S.C. § 3553(e). "Substantial" assistance is the minimum necessary to qualify for a section 5K1.1 departure; it does not serve as both a floor and a ceiling. Since we have concluded that the Commission intended section 5K1.1 to bar a departure for substantial assistance in the absence of a motion, and that section 5K2.0 does not serve as an alternative source of authority for substantial assistance departures, there is no room for the loophole defendant seeks. "To hold otherwise 'would undermine, if not eviscerate' the government motion requirement of section 5K1.1." *United States v. White,* 71 F.3d 920, 928 (D.C.Cir.1995) (quoting *United States v. Watson,* 57 F.3d 1093, 1096 (D.C.Cir.1995)).

## V

We conclude that in the absence of a government motion, a district court lacks authority under the Guidelines to depart from the applicable sentencing range on the basis of a defendant's substantial assistance. This is not to say that a court may never sentence below the Guidelines when a prosecutor refuses to file an authorizing motion. As the Supreme Court stated in *Wade,* district courts have the authority to grant relief "if they find that the refusal was based on an unconstitutional motive," or "if the prosecutor's refusal to move was not rationally related to any legitimate Government end." *Wade,* 504 U.S. at 185–86, 112 S.Ct. 1840. A court may also grant relief if the defendant's cooperation was provided pursuant to a plea agreement, and the government's refusal to file is attributable to bad faith or other breach of the agreement. *See United States v. Jones,* 58 F.3d 688, 692 (D.C.Cir.1995); *United States v. Sparks,* 20 F.3d 476, 479 (D.C.Cir.1994); *Doe,* 934 F.2d at 361 (D.C.Cir.); *see also Wade,* 504 U.S. at 185, 112 S.Ct. 1840 (citing *Santobello v. New York,* 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). But the authority to grant relief in such cases derives not from the Sentencing Guidelines themselves, but from law exogenous to the Guidelines—namely, from principles of contract and the Constitution.[26]

The defendant has not contended that any of these principles apply to his case. Nor has the government filed a motion on his behalf. Accordingly, a departure is unavailable and the judgment of the district court is affirmed.

EDWARDS, Chief Judge, and TATEL, Circuit Judge, concurring:

We originally viewed this case as turning on the difference between two distinct departure factors—substantial assistance *with* a government motion versus sub-

---

narily would not be justified" when offense is bribery "unless the circumstances are unusual"). *See generally Koon,* 518 U.S. at 94–96, 116 S.Ct. 2035. There is no such language in § 5K1.1.

25. *See United States v. Agu,* 949 F.2d 63, 65–66 (2d Cir.1991) ("The 'to a degree' component of section 3553(b) offers no escape from procedural limitations like the 'motion of the government' requirement of section 5K1.1. It is one thing to permit a departure where the commission has assigned a value to some circumstance and in a particular case that circumstance is present to such a degree that the sentencing judge may fairly conclude that

adequate consideration by the Commission was lacking. It is quite another thing to permit departures from procedural requirements....").

26. Our analysis, although not our result, differs in this regard from that of the Third Circuit. In *Abuhouran,* that Circuit concluded that a prosecutor's refusal to file a substantial assistance motion, because of unconstitutional motive or bad faith with respect to a plea agreement, would take the case out of the heartland of § 5K1.1 and give a judge authority to depart under Guidelines § 5K2.0. *See* 161 F.3d at 214.

stantial assistance *without* a government motion—but we are now persuaded otherwise. Having benefitted from *en banc* review, we are convinced by the Guidelines' language, structure, and drafting history that the relevant departure factor is properly characterized simply as substantial assistance, that the government motion requirement constitutes a procedural limitation on its availability, and that the Sentencing Commission "did intend to preclude departures without [government] motions." Maj. Op. at 132.

We continue to believe, however, that courts must exercise particular caution before concluding that the Commission actually has chosen to limit district judges' traditional sentencing discretion, and that the *expressio unius* maxim, by itself, is "too thin a reed" to have much force in this context. *Cf. Mobile Communications Corp. of Am. v. FCC*, 77 F.3d 1399, 1405 (D.C.Cir.1996) (internal quotation and citation omitted). To be sure, exercising caution is not the same as applying a full-fledged "plain statement" canon, but in close cases we should steer away from inferring that the Commission has limited traditional judicial sentencing discretion. As the Commission itself has recognized, the Guidelines were never intended to remain static; to the contrary, the Commission's ability continually to monitor an evolving federal sentencing common law is central to its goal of refining and improving the Guidelines over time. *See* U.S.S.G. Ch.1, Pt.A, intro. cmt. 4(b). Judge Garland's thorough opinion reflects the scrutiny appropriate in these cases.

\* \* \*

We do not understand why Judge Henderson feels the need to accuse Senior Judge Buckley and us of "disregard[ing] our established [*Irons* footnote] procedure and, far worse, fail[ing] to honor the bedrock principle of stare decisis." Henderson Op. at 145–46. She is wrong on both counts.

To begin with, stare decisis simply has no applicability if a prior precedent has been altered by an intervening decision from a higher court. No case Judge Henderson cites casts doubt on this unassailable proposition. Acting in good faith, the three-judge panel in this case unanimously concluded that *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), effectively overruled this court's prior decision in *United States v. Ortez*, 902 F.2d 61 (D.C.Cir.1990), by altering the analytical framework governing the availability of sentencing departures. The fact that we ultimately turned out to be wrong in our application of *Koon* does not mean that we "failed to honor" stare decisis.

Judge Henderson also misrepresents this court's *Irons* footnote policy. Although the policy certainly *permits* a panel to use an *Irons* footnote to secure full-court endorsement before ruling that an intervening Supreme Court decision has overruled a circuit precedent, the policy does not require it. In fact, in a passage that Judge Henderson fails to cite, the policy clearly states that:

> Nothing in the foregoing statement of the court's policy is intended ... to limit a panel's discretion to decide a case *without* resort to *en banc* endorsement. In other words, a panel may always.... determine ... that a prior holding has been superseded, and hence is no longer valid as precedent....

Policy Statement on *En Banc* Endorsement of Panel Decisions 2–3 (Jan. 17, 1996) (emphasis added); *see also Dellums v. United States Nuclear Regulatory Comm'n*, 863 F.2d 968, 978 n. 11 (D.C.Cir. 1988) (Silberman, J.) (rejecting the notion that en banc review is required to "formally bur[y]" circuit precedent that is "out of step" with intervening Supreme Court precedent because "it is black letter law that a circuit precedent eviscerated by subsequent Supreme Court cases is no longer binding on a court of appeals") (citing *City of Lafayette v. Louisiana Power & Light*

*Co.,* 532 F.2d 431, 435 (5th Cir.1976) ("It is settled that the rule against inconsistent panel decisions has no application when intervening Supreme Court precedent dictates a departure from a prior panel's holding.")). Intended to promote efficiency, the *Irons* footnote policy allows—but expressly does not require—three-judge panels to conclude that it would be economical to attempt to secure unanimous full-court consent before deciding that a circuit precedent is no longer good law. Indeed, just last month a panel of this court comprised of Judges Ginsburg, Sentelle, and Randolph held, also without using an *Irons* footnote, that an otherwise controlling circuit precedent had been superseded by an intervening Supreme Court decision. *See Kooritzky v. Herman,* 178 F.3d 1315 (D.C.Cir.1999). Again, the fact that the panel's interpretation of an intervening Supreme Court decision turns out to have been mistaken in the instant case does not indicate that we "disregarded" anything.

Equally misleading is Judge Henderson's statement that the panel's treatment of circuit precedent was *"sub silentio."* Henderson Op. at 147. To the contrary, the panel opinion expressly stated that: "Insofar as this [holding] contradicts our holding in *Ortez* that district courts lack authority to consider substantial assistance absent a government motion, *Koon* effectively overrules that aspect of *Ortez.*" *In re Sealed Case,* 149 F.3d 1198, 1204 (D.C.Cir.1998). Furthermore, pursuant to this court's rules, the opinion was circulated to the full court prior to its release; every judge was fully aware of and had an opportunity to comment on the opinion before it issued.

Though in error, the panel opinion did not betray any judicial policy, nor did it indicate that we were somehow faithless to the rule of law.

SENTELLE, Circuit Judge, concurring:

I do not disagree with any part of the court's thorough opinion affirming the district court. I write separately only to say that I think this is not nearly so close a case as the very thoroughness of the majority opinion might imply. As the court states, "Our analysis begins with the language of section 5K1.1, . . . 'Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.'" Maj. Op. at 131. As the court's opinion suggests, the venerable canon of construction *expressio unius est exclusio alterius,* that is, "the mention of one thing implies exclusion of another," would support an inference that because the Commission expressly provided for departure upon substantial assistance upon the motion of the government, the Commission intended to exclude the possibility of departure without such a government motion. While I find the majority's further reasoning convincing, and perhaps helpful, in my view, that inference alone would be sufficient to reach the holding entered by the court today.

While I accept, and indeed fully endorse, the holding of *Shook v. D.C. Financial Responsibility & Management Assistance Authority,* 132 F.3d 775, 782 (D.C.Cir. 1998), to the effect that the force of that canon "in particular situations depends entirely on context, whether or not the draftsmen's mention of one thing, like a grant of authority, does really necessarily, or at least reasonably, imply the preclusion of alternatives," in the context of the guideline, I think that the mention of the government's motion indeed does imply such an intent to exclude departure without such motion. In *Shook,* we emphasized that the *expressio unius* maxim "should be used as a starting point in statutory construction." *Id.* We, however, observed that the "force" of the canon "turn[s] on whether, looking at the structure of the statute and perhaps its legislative history, one can be confident that a normal draftsman when he expressed 'the

one thing' would have likely considered the alternatives that are arguably precluded." *Id.* After examining the relevant guideline language and the context in which it was adopted, I conclude that a normal draftsman providing for departure upon government motion would have likely considered the alternative—departure without government motion. I therefore conclude that the *expressio unius* maxim precludes departure under section 5K1.1 absent a government motion.

In reaching this conclusion, my application of the *expressio unius* canon is assisted by the equally venerable canon of construction that courts, in construing a statute, or in this case a guideline, "will avoid a reading which renders some words altogether redundant." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 574, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995). The construction offered by appellant in the present case, that is, that the Commission did not by expressly including the authority of a court to depart upon motion of the government intend to exclude departure without that motion renders the Commission's inclusion of that condition "altogether redundant." Otherwise put, if the Commission intended for courts to be empowered to depart on the basis of substantial assistance without a government motion, why did the Commission include the phrase "upon motion of the government" in the guideline at all? Appellant not having supplied any satisfactory answer to that question, I would hold that in the context of the guideline, the *expressio unius* canon applies with full force, and the authority of the court to depart without such a motion is impliedly excluded.

In short, I reiterate that I do not disagree with the more detailed analysis offered by the court—indeed I find it both persuasive and correct. But I do not think it necessary to our decision.

**KAREN LeCRAFT HENDERSON,** Circuit Judge, concurring:

I wholeheartedly agree with the majority's holding which disposes of this case with clarity and in full accord with the decisions of courts, including ours, that have ruled on the issue. I write separately to register my concern about the process leading up to the *en banc* affirmance of the district court—which process, I am convinced, disregarded our established procedure and, far worse, failed to honor the bedrock principle of stare decisis. Let me explain.

The United States Supreme Court has repeatedly characterized stare decisis as "the preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *See, e.g., Hohn v. United States,* 524 U.S. 236, 118 S.Ct. 1969, 1977, 141 L.Ed.2d 242 (1998) (quoting *Payne v. Tennessee,* 501 U.S. 808, 827, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991)). For this court, "[t]he doctrine of *stare decisis* 'demands that we abide by a recent decision of one panel of this court unless the panel has withdrawn the opinion or the court *en banc* has overruled it.'" *Department of Treasury v. FLRA,* 862 F.2d 880, 882 (D.C.Cir.1988) (quoting *Brewster v. Commissioner,* 607 F.2d 1369, 1373 (D.C.Cir.1979)). Since at least the early 1980s, the court has from time to time used the *"Irons* footnote" to overrule a prior decision without a full-blown *en banc* rehearing. *See Irons v. Diamond,* 670 F.2d 265, 268 n. 11 (D.C.Cir.1981). Under the *Irons* footnote procedure a panel decision departing from precedent is circulated to the full court for endorsement before issuance and issued with a footnote indicating the endorsement. Over the years, this court has invoked widely varying justifications for using the procedure, including to resolve conflicts in circuit law,[1] to expand or limit earlier de-

---

1. *See, e.g., Irons v. Diamond,* 670 F.2d at 268    n. 11; *Lorion v. United States Nuclear Regula-*

cisions,[2] to reject "dicta"[3] or simply to overrule a decision deemed incorrect or outdated.[4] To impose some order on *Irons* footnote use, the court promulgated a "policy statement" in 1996 setting out specific circumstances "for which the court reaffirm[ed] the propriety of [the footnote's] use," among them when "overruling a more recent precedent which, due to an intervening Supreme Court decision, ... a panel is convinced is clearly an incorrect statement of current law." *Cf. Chemical Waste Management, Inc. v. United States Envtl. Agency,* 873 F.2d 1477, 1481 (rejecting circuit precedent presuming that statutory reference to "hearing" requires formal adjudicatory procedure largely because of intervening holding in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)). As the majority opinion notes, Maj. Op. at 144, the panel here explicitly acknowledged that its holding "contradicts our holding in [*United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990)] that district courts lack authority to consider substantial assistance absent a government motion," *In re Sealed Case,* 149 F.3d 1198, 1204 (D.C.Cir.1998). While it did discuss, and then reject, *Ortez,* con-

cluding that "*Koon* effectively overrules that aspect of *Ortez,*" 149 F.3d at 1204, it did so with no *Irons* footnote seeking *en banc* endorsement (based presumably on "an intervening Supreme Court decision" making *Ortez* "clearly an incorrect statement of current law"). Had the panel opinion been circulated to the full court with an *Irons* footnote, the opinion would not have been endorsed unanimously as required (as manifested by today's lopsided vote to the contrary) and it could not have issued in the form it did.[5] The fact that we are correcting our course now does not, and should not, obscure what necessitated the correction.

Even worse, the panel made *no mention* of five more recent circuit opinions (at least two of which the government expressly relied on, *see* Panel Brief of Appellee at 7, 34), which, again as the majority notes, reached the same conclusion as *Ortez. See* Maj. Op. at 131 & n. 4. *See United States v. Dyce,* 91 F.3d 1462, 1469 (D.C.Cir.1996) ("[T]he Sentencing Guidelines make specific provision [in U.S.S.G. § 5K1.1] for a downward departure where a defendant supplies substantial assistance to the Government, but *only where* the

tory Comm'n, 712 F.2d 1472, 1479 (D.C.Cir. 1983).

**2.** *See, e.g., Londrigan v. FBI,* 722 F.2d 840, 844–45 (D.C.Cir.1983) (purporting to "add to what was said"); *United States v. Brawner,* 32 F.3d 602, 603 (D.C.Cir.1994) ("limiting the scope").

**3.** *See, e.g., United States Dep't of Navy v. FLRA,* 952 F.2d 1434, 1439 (D.C.Cir.1992); *Chemical Waste Management, Inc. v. United States Envtl. Protection Agency,* 873 F.2d 1477, 1482 (D.C.Cir.1989); *Melcher v. Federal Open Market Committee,* 836 F.2d 561, 563–64 (D.C.Cir.1987); *Center for Science in Pub. Interest v. Regan,* 802 F.2d 518, 524 (D.C.Cir. 1986).

**4.** *See, e.g., Harbor Ins. Co. v. Schnabel Found. Co., Inc.,* 946 F.2d 930, 936 (D.C.Cir.1991) ("wrongly decided" opinion); *United States v. Marble,* 940 F.2d 1543, 1547 (D.C.Cir.1991) ("line of cases" that "ha[d] become a victim of the shifting sands of statute and case law").

**5.** I believe our *Irons* footnote procedure has serious flaws. It has evolved from an expedient device to reconcile inconsistent circuit holdings into a summary method of overruling unambiguous circuit precedent, without any of the safeguards or formalities attending the *en banc* process. A three-judge panel determines that full-court consideration is warranted and non-panel members concur without benefit of briefing or argument. The resulting decision is then announced by footnote. Reasoned decisionmaking and stare decisis call for a more deliberate process. If we wish to change our precedent, we should invoke the *en banc* mechanism expressly authorized for that purpose by the Federal Rules of Appellate Procedure. *See* Fed. R.App. P. 35. As long as the *Irons* footnote procedure exists, however, the least we should do is follow it. *See, e.g., Byrd v. Reno,* 180 F.3d 298 (D.C.Cir. 1999).

Government certifies to the district court that the help received has been of sufficient value to warrant the departure.") (emphasis added); *United States v. White,* 71 F.3d 920 (D.C.Cir.1995) (holding that "in the absence of a government motion the district court has no authority to depart under section 5K1.1."); *United States v. Jones,* 58 F.3d 688, 691 (D.C.Cir.1995) ("[T]he U.S. Attorney enjoys extraordinary power under section 5K1.1 because, by its terms, a motion of the Government is a prerequisite to the exercise of judicial discretion to depart below the Guidelines range.") (citation omitted); *United States v. Watson,* 57 F.3d 1093, 1096–97 (D.C.Cir. 1995) ("[I]t is well established that a court may not order a departure on the ground of the defendant's assistance if the government does not so move under section 5K1.1.") (citing *Ortez,* 902 F.2d at 64); *United States v. Doe,* 934 F.2d 353, 356–58 (D.C.Cir.1991) (holding that § 5K1.1's "government motion requirement" does not violate due process, thereby "adher[ing] to prior intimations in our own precedent") (citing *Ortez*).[6] With one *sub silentio* sweep, the panel reversed this substantial body of circuit authority. "Stare decisis" means "to stand by things decided." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 515 (1987). Its protection extends to *Ortez* as well as the five other cases decided by this court.

---

**6.** Nor did the panel note the decision of the United States Supreme Court, discussed at length in *United States v. White,* that stated: "[The petitioner's] position is consistent with the view, which we think is clearly correct, that in both [18 U.S.C.] § 3553(e) and § 5K1.1 the condition limiting the court's authority gives the Government a power, not a duty, to file a motion when a defendant has substantially assisted." *Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992).