**UNITED STATES of America,**
**Appellee,**

v.

.**Dennis Llewellyn TAPPIN,**
**Defendant–Appellant.**

**Docket No. 99–1439**

United States Court of Appeals,
Second Circuit.

Argued: Feb. 3, 2000

Decided: March 9, 2000

damages for his delay, and single or double costs.

JOSÉ A. CABRANES, Circuit Judge:

Defendant Dennis Llewellyn Tappin appeals from a judgment of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*), convicting him, following a guilty plea, of illegal reentry into the United States after having been deported following conviction of an aggravated felony, in violation of 8 U.S.C. § 1326, and sentencing him principally to forty-one months' imprisonment. On appeal, Tappin argues that the District Court erred in concluding, based on an application note to the relevant provision of the Sentencing Guidelines, that it lacked the power to depart downwardly on the ground that Tappin's predicate aggravated felony conviction was for a relatively minor offense. We disagree, and therefore affirm the judgment of the District Court.

## I.

Tappin, a native of Guyana, entered the United States in 1967 on a student visa, and became a permanent resident in 1969. In 1992, however, Tappin was deported to Guyana following a 1991 conviction in New York State Supreme Court of attempted criminal sale of a controlled substance in the third degree. Tappin's conviction apparently arose from his sale of one glassine envelope of heroin to an undercover police officer in exchange for $20. As a result of the conviction, he was sentenced to six months' imprisonment and five years' probation. After serving the prison term, Tappin was deported to Guyana on November 11, 1992.

In June 1997, Tappin was arrested in New York City for violating the terms of his probation by failing to report.[1] On June 5, 1997, while Tappin was incarcerated at Rikers Island, an agent of the Immigration and Naturalization Service ("INS") interviewed him. During that interview,

Henriette D. Hoffman, Federal Defender Division Appeals Bureau, Legal Aid Society, New York, NY, for Defendant–Appellant.

Steven R. Glaser, Assistant United States Attorney for the Southern District of New York (Mary Jo White, United States Attorney for the Southern District of New York, and Christine H. Chung, Assistant United States Attorney for the Southern District of New York, of counsel), for Appellee.

Before: OAKES, CABRANES, and SACK, Circuit Judges.

Judge OAKES dissents in a separate opinion.

---

**1.** According to Tappin, he was unaware that he was on probation, and therefore obligated to report.

Tappin admitted that he had reentered the United States illegally in January 1997.

On September 18, 1997, Tappin was charged in a one-count indictment with illegal reentry in violation of 8 U.S.C. § 1326.[2] Just under two months later, following his release from Rikers Island and efforts by the INS to locate him, Tappin was arrested. On January 21, 1999, Tappin pleaded guilty to the sole charge in the indictment.

Following Tappin's guilty plea, the United States Probation Office ("Probation") prepared a Pre–Sentence Investigation Report ("PSR") recommending a Sentencing Guidelines ("Guidelines") range of forty-six to fifty-seven months' imprisonment. Using the November 1, 1998 edition of the Guidelines, Probation arrived at this recommendation by beginning with a base offense level of eight pursuant to U.S.S.G. § 2L1.2(a), for unlawful entry into the United States, and applying a sixteen-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A), because Tappin "previously was deported after a criminal conviction" (his 1991 drug conviction) and "the conviction was for an aggravated felony."[3] The PSR also recommended a three-level reduction for acceptance of responsibility, and assigned Tappin a Criminal History Category of III based on his 1991 drug conviction and the fact that he was on probation when he illegally reentered the United States.

Although Probation recommended against any downward departure, Tappin argued before the District Court that departure was appropriate because the aggravated felony that led to his deportation—the 1991 drug conviction—was "a comparatively minor" offense. In making this argument, Tappin advanced two alternative bases for the District Court's authority to depart. First, Tappin contended that the Court had authority to depart because his case—due to, *inter alia*, the nature of the predicate aggravated felony conviction, his history of gainful employment, and his conduct since reentering the United States—fell outside the "heartland" of cases under U.S.S.G. § 2L1.2. Second, Tappin asserted that the District Court could depart pursuant to Application Note 5 to U.S.S.G. § 2L1.2 ("Application Note 5"). Application Note 5, which went into effect on November 1, 1997, provides:

> Aggravated felonies that trigger the [sixteen-level] adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; *and* (C) the term of imprison-

<hr>

2. Section 1326 states in relevant part:
[A]ny alien who—
> (1) has been ... deported[ ] or removed ..., and thereafter
> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance ·consent under this chapter or any prior Act,
shall be fined ... or imprisoned....

3. Section 2L1.2(b)(1) provides:
If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States fol-

lowing a removal order issued after a criminal conviction, increase [the base offense level] as follows (if more than one applies, use the greater):
> (A) If the conviction was for an aggravated felony, increase by 16 levels.
> (B) If the conviction was for (i) any other felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by 4 levels.

Tappin understandably concedes that his 1991 drug conviction constitutes an aggravated felony conviction. *See* U.S.S.G. § 2L1.2 application note 1 (incorporating the definition of "aggravated felony" in 8 U.S.C. § 1101(a)(43)); 8 U.S.C. § 1101(a)(43) (defining "aggravated felony" to include, *inter alia*, "illicit trafficking in a controlled substance").

ment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S.S.G. § 2L1.2 application note 5 (emphasis added). Tappin conceded that he technically did not meet the criteria listed in Application Note 5—because he was convicted in New York State in 1973 of criminal possession of a weapon in the third degree, a felony, and therefore had "previously been convicted" of more than one felony offense. Nevertheless, he argued that based on the age of this first conviction and the "comparatively minor nature" of the 1991 drug conviction, the District Court could—and should—depart in the "interests of justice."

After hearing oral argument, the District Court rejected Tappin's motions for downward departure. In particular, the Court concluded that it could depart downwardly on the basis of the seriousness of the predicate aggravated felony only if Tappin met *all three* criteria in Application Note 5—that is, only if (A) Tappin had previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; *and* (C) the term of imprisonment imposed for such offense did not exceed one year. Since, by Tappin's own admission, he did not meet the first criterion (because he had two prior felony convictions—to wit, the 1973 weapons conviction and the 1991 drug conviction) the District Court concluded that it lacked authority to depart downwardly.[4]

The Court agreed with Tappin, however, that the Criminal History Category recommended by Probation overstated the seriousness of Tappin's criminal background because he allegedly did not realize that he

was on probation when he illegally reentered the United States.[5] On that basis, the Court reduced Tappin's Criminal History Category to II, which yielded a Guidelines range of forty-one to fifty-one months' imprisonment. The District Court then sentenced Tappin to the lowest end of this range—forty-one months' imprisonment—and imposed a three-year term of supervised release and a mandatory special assessment of $100. This appeal followed.

## II.

■ On appeal, Tappin argues that, despite his failure to satisfy one of the three criteria in Application Note 5, the District Court nevertheless had discretion under *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), to grant a downward departure on the basis of the seriousness of the predicate aggravated felony. We review the District Court's interpretation and application of the Guidelines for abuse of discretion. *See, e.g., id.* at 99–100, 116 S.Ct. 2035; *United States v. Young*, 143 F.3d 740, 743 (2d Cir.1998). However, "whether a factor is a permissible basis for departure under any circumstances is a question of law, and the court of appeals need not defer to the district court's resolution of the point." *Koon*, 518 U.S. at 100, 116 S.Ct. 2035.

■ A sentencing court may depart, and "impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines

---

**4.** If a defendant does not satisfy the first criterion in Application Note 5, a sentencing court need not consider whether the defendant satisfies the second or third criterion since these criteria, by their terms ("such offense"), are relevant only if a defendant has previously been convicted of only one felony offense. Because Tappin conceded that he did not satisfy the first criterion, the District Court

did not consider whether Tappin satisfied the second or third criterion.

**5.** Because Tappin completed his sentence with respect to the 1973 weapons conviction more than fifteen years prior to commencement of his illegal reentry offense, the District Court did not count the 1973 conviction in calculating Tappin's Criminal History Category. *See* U.S.S.G. § 4A1.2(e).

that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)). With the exception of a few factors listed by the Guidelines that a sentencing court may not consider as grounds for departure, *see Koon*, 518 U.S. at 93, 116 S.Ct. 2035 (listing some such factors and the corresponding Guidelines provisions), the Guidelines do not limit "'the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.'" *Id.* at 93, 116 S.Ct. 2035 (quoting U.S.S.G., ch. 1, pt. A, intro. comment. 4(b)). However, because one of the major purposes of the Guidelines was to eliminate unjustified disparities in sentences among similarly situated defendants, "[b]efore a departure is permitted, certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon*, 518 U.S. at 98, 116 S.Ct. 2035; *accord United States v. Labeille–Soto*, 163 F.3d 93, 100 (2d Cir. 1998); *see Young*, 143 F.3d at 743 ("[I]t is axiomatic that departures from the guideline range are appropriate only if the case is atypical or outside of the heartland.").

In the present case, the District Court held that it lacked the power to depart based on the nature of Tappin's predicate aggravated felony because Tappin did not meet the first of the three criteria listed in Application Note 5 to U.S.S.G. § 2L1.2—namely, that "the defendant has previously been convicted of only one felony offense." U.S.S.G. § 2L1.2 application note 5. In essence, the Court concluded that, in enacting Application Note 5, the Sentencing Commission defined the "heartland" of cases under U.S.S.G. § 2L1.2 by exclusion; that is, the "heartland" of cases under § 2L1.2 includes all cases of illegal reentry following conviction for an aggravated felony *except* those that meet the three enumerated criteria in the Note. As the District Court explained at sentencing:

> This is a circumstance in which the Sentencing Commission, by adding application note 5 to section 2L1.2, made it absolutely crystal clear that it under-

stood that the circumstances that result in people having aggravated felony records in unlawful reentry cases vary very widely, and they attempted to address it, and I think for me to adopt [defense counsel's] argument [that Tappin's case is outside the heartland] would be to ignore the fact that the Sentencing Commission, whether they did it well or not, addressed precisely the point that [defense counsel] is making. I don't think I am at liberty to do that.

> .   .   .   .   .

> ... [T]he language of application note 5 is crystal clear and admits of no exception.... [I]f it said in the second sentence, "If, for example," and continued, it would mean what [defense counsel] would like me to construe it as meaning.... But it doesn't say that.

Applying the rule of statutory construction *"inclusio unius est exclusio alterius"*— that to express or include one thing implies the exclusion of the other, or of the alternative—the District Court concluded that it lacked discretion to depart based on the seriousness of Tappin's predicate felony conviction because Tappin did not satisfy one of the three criteria listed in Application Note 5.

We agree with the District Court's analysis and its conclusion. In enacting Application Note 5, the Sentencing Commission plainly took into account the fact that predicate aggravated felonies in illegal reentry cases "vary widely." U.S.S.G. § 2L1.2 application note 5. The Sentencing Commission stated explicitly that departure on the ground of seriousness of the predicate aggravated felony may be appropriate when a defendant meets all three enumerated criteria in the Note. By necessary implication, therefore, the Sentencing Commission intended that all other cases—including Tappin's, since he had more than one previous felony conviction and therefore did not meet the first enumerated criterion—should be treated as within the heartland of illegal reentry cases under § 2L1.2(b)(1)(A), and that downward departure in such cases on the

ground of seriousness of the predicate aggravated felony would be improper.[6] *Cf. United States v. McKenzie*, 193 F.3d 740, 742 (3d Cir.1999) (holding that the defendant was not entitled to a downward departure under Application Note 5 because the term of imprisonment imposed for his predicate aggravated felony exceeded one year and he therefore did not satisfy the third criterion in the Note); *United States v. Chavez–Valenzuela*, 170 F.3d 1038, 1040 (10th Cir.1999) (same).

To permit a sentencing court in these circumstances to depart downwardly absent satisfaction of all three criteria in Application Note 5 would, in our view, render the Note effectively meaningless. Tappin argues otherwise only by mischaracterizing the relevant factor as "seriousness of the aggravated felony" *in conjunction with* other circumstances. Noting that the Guidelines do not expressly *prohibit* departure based on seriousness of the aggravated felony absent the three criteria in Application Note 5, he would have us treat "seriousness of the aggravated felony" as an encouraged, or presumptively appropriate, factor for departure when a defendant meets all three criteria, and as a permissible, albeit not presumptively appropriate, factor for departure in other cases. Thus, he contends that a sentencing court should be permitted to depart downwardly based on seriousness

of the aggravated felony even absent the three criteria in Application Note 5, so long as the court finds that the case is "unusual enough for it to fall outside the heartland of cases" under § 2L1.2. *Koon*, 518 U.S. at 98, 116 S.Ct. 2035.

Contrary to Tappin's argument, however, nothing in the "sentencing guidelines, policy statements, and official commentary of the Sentencing Commission," 18 U.S.C. § 3553(b)—the only materials we are permitted to use in determining whether a factor may justify departure, *see Koon*, 518 U.S. at 92–93, 116 S.Ct. 2035—supports this reading of Application Note 5. To the contrary, these materials—principally the language of Application Note 5 itself—make it plain that the relevant factor to be considered is "seriousness of the predicate aggravated felony" *simpliciter. Cf. In re Sealed Case*, 181 F.3d 128, 137–38 (D.C.Cir.1999) (en banc) (rejecting a similar invitation by a defendant to parse the factor at issue under U.S.S.G. § 5K1.1, and concluding that "the appropriate characterization of the factor is ... 'Substantial Assistance to Authorities,' *simpliciter*"). Because this factor was "adequately taken into consideration by the Sentencing Commission in formulating the guidelines," 18 U.S.C. § 3553(b), it is not a proper basis for departure absent satisfaction of all three conditions enumerated by the Sentencing Commission.[7]

---

6. The District Court concluded that Tappin's 1973 weapons conviction precluded any downward departure on the ground of seriousness of the predicate aggravated felony, but, pursuant to U.S.S.G. § 4A1.2(e), did not count Tappin's 1973 conviction in calculating his Criminal History Category. *See supra* note 5. Tappin implies that such differing treatment of an old conviction is unfair, but we perceive no unfairness. To the contrary, as the Seventh, Eighth, and Ninth Circuits have held, "policy concerns underlying the measure of the offense level and the calculation of the criminal history category justif[y] the differing treatment of prior convictions." *United States v. Lara–Aceves*, 183 F.3d 1007, 1013–14 (9th Cir.1999); *accord United States v. Gonzalez*, 112 F.3d 1325, 1329–30 (7th Cir. 1997); *United States v. Maul–Valverde*, 10 F.3d 544, 546–47 (8th Cir.1993), *overruled on*

other grounds by *United States v. Diaz–Diaz*, 135 F.3d 572 (8th Cir.1998).

7. We recognize that our conclusion is in tension, if not conflict, with decisions by at least three other Courts of Appeals. *See United States v. Alfaro–Zayas*, 196 F.3d 1338, 1342–43 (11th Cir.1999); *United States v. Sanchez–Rodriguez*, 161 F.3d 556, 562–63 & n. 12 (9th Cir.1998) (en banc); *United States v. Diaz–Diaz*, 135 F.3d 572, 579–82 (8th Cir.1998); *see also United States v. Robles–Medina*, No. 98–4172, 1999 WL 417630, at *2–3 (10th Cir. June 23, 1999) (unpublished opinion). In our view, however, these authorities are unpersuasive: *Sanchez–Rodriguez* discusses the relevant issue only briefly, in what we view as unconsidered *dictum; Alfaro–Zayas* relies almost exclusively on *Sanchez–Rodriguez*, and also discusses the issue in *dictum*; and in *Diaz–Diaz*, the Court affirmed the district

We are unpersuaded by Tappin's reliance on *Koon* to argue that departure based on seriousness of the aggravated felony absent the three criteria in Application Note 5 is permitted because the Guidelines do not *expressly* prohibit such departure. To be sure, *Koon* quotes the Sentencing Commission in stating that with the exception of a few prohibited factors, the Commission " 'd[id] not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.' " 518 U.S. at 106, 116 S.Ct. 2035 (quoting U.S.S.G. ch. I, pt. A, intro. comment. 4(b)). However, nothing in *Koon* otherwise suggests that the Supreme Court intended to impose a "clear statement" canon of construction on the Guidelines—thereby requiring the Sentencing Commission, in every instance, to state its intentions clearly and expressly. *See, e.g., In re Sealed Case,* 181 F.3d at 139 (rejecting an argument "that, post-*Koon,* a 'clear statement' canon governs every aspect of the Guidelines Manual"). To the contrary, *Koon* states that "an impermissible factor need not be invoked by name to be rejected." 518 U.S. at 110, 116 S.Ct. 2035. Moreover, the *Koon* Court itself held that one factor cited by the lower court as a basis for departure was improperly relied upon because the Sentencing Commission *implicitly* gave "adequate[ ] consider[ation]" to the factor in drafting the Guidelines. *Id.* at 110–11, 116 S.Ct. 2035; *see also United States v. Richardson,* 923 F.2d 13, 16 (2d Cir.1991) (holding that a sentencing court may not depart downwardly under the career offender provision of the Guidelines based on the

quantity of drugs because "[q]uantity is *implicitly* and, in our view, adequately considered in the computation of the base offense level" (emphasis added)); *United States v. Tejeda,* 146 F.3d 84, 87 (2d Cir. 1998) (reaffirming the holding in *Richardson* after *Koon*).

■ Finally, we reject Tappin's alternative argument that the District Court, in relying on Application Note 5, violated the Ex Post Facto Clause of the Constitution. The Ex Post Facto Clause is violated when application of an existing sentencing guideline results in "greater punishment" than would have been imposed under the guideline in effect on the date a crime was completed. *United States v. Patasnik,* 89 F.3d 63, 70 (2d Cir.1996); *accord Labeille–Soto,* 163 F.3d at 102. Here, although the effective date of Application Note 5 (November 1, 1997) was later than the date Tappin's crime was "completed" (no later than June 5, 1997),[8] the change in the Guidelines did not result in "greater punishment." To the contrary, it was well settled in this Circuit that, under the version of the Guidelines in effect on the date Tappin's offense was completed, a district court could not depart downwardly in an illegal reentry case based on the seriousness of a predicate aggravated felony, at least when that felony involved narcotics. *See United States v. Abreu–Cabrera,* 64 F.3d 67, 74–76 (2d Cir.1995); *United States v. Polanco,* 29 F.3d 35, 38 (2d Cir. 1994); *cf. United States v. Amaya–Benitez,* 69 F.3d 1243, 1246–48 (2d Cir.1995) (holding that the district court had no authority to depart downwardly under § 2L1.2 based on the seriousness of the

court's "fact-based judgment call" to depart downwardly under Application Note 5 without even considering whether the defendant's apparent failure to satisfy the first criterion in the Note precluded such departure. Accordingly, to the extent our conclusion conflicts with these decisions, we decline to follow them.

8. As we explained in *Labeille–Soto,* the offense of being "found in" the United States in violation of 8 U.S.C. § 1326 "is complete

when the authorities both discover the illegal alien in the United States, and know, or with the exercise of diligence typical of law enforcement authorities could have discovered, the illegality of his presence." 163 F.3d at 102 (internal quotation marks and citation omitted). In Tappin's case, as the Government concedes, the relevant date is no later than June 5, 1997, when an agent of the INS interviewed him at Rikers Island and he acknowledged reentering the United States illegally.

defendant's predicate conviction for aggravated rape).[9] Accordingly, the District Court's reliance on Application Note 5 did not violate the Ex Post Facto Clause.

### III.

In sum, we hold that:

(1) a sentencing court lacks the power to grant a downward departure under U.S.S.G. § 2L1.2 based on the seriousness of a predicate aggravated felony absent satisfaction of all three enumerated criteria in Application Note 5;

(2) the District Court properly concluded that it lacked authority to depart in Tappin's case because Tappin had previously been convicted of more than one felony and therefore did not satisfy the first criterion in Application Note 5; and

(3) the District Court's reliance on Application Note 5 did not violate the Ex Post Facto Clause of the Constitution.

Accordingly, the judgment of the District Court is affirmed.

OAKES, Senior Circuit Judge:

I dissent.

It seems to me the literal reading of Application Note 5 to U.S.S.G. § 2L1.2 engaged in by the learned majority and the district court is wooden and unsound. I agree with the district judge that the Sentencing Commission, "having recognized in the first sentence the wide variability in the aggravated felonies that trigger the [16–level] bump-up, then proceeded to adopt an exceptionally flawed solution to that problem by enacting a straight jacket that doesn't make a great deal of sense." I also agree with appel-

lant that under *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), unless a factor is prohibited, it may be taken into account in an atypical case. *Id.* at 93, 116 S.Ct. 2035 ("the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.") (quoting U.S.S.G., ch. 1, pt. A, intro. comment. 4(b)). Indeed, the Commission focused in on the very problem here when it said, "When a court finds an atypical case, one to which a particular guideline *linguistically* applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." *Id.* (emphasis added).

Tappin's conduct did significantly differ from the norm in the following respects:

1) The prior felony was 26–plus years old and is not countable as criminal history under the § 4A1.2(e) rule;

2) The prior felony was third-degree possession of a gun which was found in Tappin's glove compartment during a road checkpoint stop;

3) The triggering felony was the sale of .8 gram (one glassine) of heroin for $20; and

4) Since his return to the United States in 1996, Tappin had not only committed no crimes, but worked with consistent superlative quality through the end of 1998 at the Bowery Residents Committee Inc. for Homeless Senior Services. His dedicated care for the program's elderly clientele earned him such praise as "loyal, trustworthy and kind," and "one of the most honest, re-

9. We are unpersuaded by Tappin's argument that the holdings in *Abreu–Cabrera* and *Polanco* were abrogated by the Supreme Court's decision in *Koon*. Our analyses in these cases were in line with the analysis required by courts following *Koon*. *See also United States v. Pornes–Garcia*, 171 F.3d 142, 148 (2d Cir.) (reaffirming *Polanco* and relying on *Abreu–Cabrera* after *Koon*), *cert. denied*, —— U.S. ——, 120 S.Ct. 191, 145 L.Ed.2d 161 (1999).

We are also unpersuaded by Tappin's reliance on the fact that during oral argument at sentencing the District Court stated that Tappin "arguably would have been better off without Application Note 5." To the extent that the District Court might have meant by this casual remark that Tappin would have received lesser punishment under the Guidelines in effect at the time his offense was completed, it was in error.

sponsible and hardest working men I have ever known."

The language of Application Note 5 is not—I repeat not—prohibitory. It should not be read to be such. To do so is to violate the spirit of the Guidelines as well as the directive of *Koon.* Tappin's is an "exceptional" case, one outside the Guideline's "heartland." The maxim relied on by my brethren in interpreting the application note, *inclusio unius est · exclusio alterius,* is "not always correct," *In re Sealed Case No. 97–3112,* 181 F.3d 128 (D.C.Cir.1999), because its application depends on context. I agree with Lord Esher that maxims "are almost invariably misleading," *Yarmouth v. France,* 19 Q.B.D. 647, 653 (1887), and with Lord Mansfield that "great caution ought to be used by the Court" in dealing with them. *Brisbane v. Deckers,* 5 Taunt. 143, 162 (1813). Holmes indeed went further: "General maxims are oftener an excuse for the want of accurate analysis than a help...." *Ryalls v. Mechanics' Mills,* 150 Mass. 190, 194, 22 N.E. 766, 767 (1889).

I therefore respectfully dissent.