**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 3 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HECTOR MARQUEZ-GALLEGOS,
also known as Hector Marquez-Reyes,

    Defendant - Appellant.

No. 99-1270

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 99-CR-1-S)**

---

Vicki Mandell-King, Assistant Federal Public Defender, Denver, Colorado, (Michael G. Katz, Federal Public Defender, Denver, Colorado with her on the brief), for Defendant-Appellant.

Sheilah M. Rogers, Assistant United States Attorney, District of Colorado, (Thomas L. Strickland, United States Attorney, District of Colorado, with her on the brief), for Plaintiff-Appellee.

---

Before **MURPHY, ALARCÓN**,*and **PORFILIO,** Circuit Judges.

_____

**ALARCÓN**, Circuit Judge.

_____

Hector Marquez-Gallegos ("Marquez") appeals from a sentence imposed by the district court after he pled guilty to a charge of unlawful reentry. His sentence for that offense was enhanced because he previously had been deported after an aggravated felony conviction. We have jurisdiction to review Marquez's sentence under 18 U.S.C. § 3742 and we affirm.

I

On February 20, 1998, Marquez was arrested in Denver, Colorado, for possessing what the arresting officer characterized as a "small quantity" of powder cocaine. He pled guilty in Denver County District Court to possession of a controlled substance, a felony. On April 6, 1998, Marquez was sentenced to three years' imprisonment for that offense. Execution of the sentence was suspended on the condition that Marquez cooperate with the Immigration and Naturalization Service. Marquez was deported on May 22, 1998.

On December 8, 1998, Marquez was again arrested in Denver. On January

---

* The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

5, 1999, Marquez was indicted on one count of unlawful reentry in violation of 8 U.S.C. § 1326(a). He entered a guilty plea on March 11, 1999.

On June 2, 1999, Marquez was sentenced to a term of seventy months' imprisonment and three years of supervised release. A conviction for unlawful reentry typically carries a maximum penalty of two years' imprisonment. See 8 U.S.C. § 1326(a). Marquez's sentence, however, reflected an enhancement under United States Sentencing Guidelines Manual § 2L1.2, which establishes a base offense level of eight for unlawful reentry and a sixteen-level enhancement where the "defendant previously was deported after a criminal conviction . . . [and] the conviction was for an aggravated felony." U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A) (1999). Marquez requested a downward departure on the basis of the lack of seriousness of his underlying aggravated felony. The district court denied the request.

II

The district court concluded that, as a matter of law, it lacked discretion to grant a downward departure on the basis of the seriousness of Marquez's underlying aggravated felony. The district court also expressed doubt as to whether, even if it had the discretion, it would grant a downward departure in Marquez's particular circumstances. The district court did not, however, go so far

as to say that it would not have departed downward on the basis of Marquez's particular circumstances. We conclude that we have jurisdiction to review the district court's decision that it lacked discretion to depart downward. See United States v. Fagan, 162 F.3d 1280, 1282 (10th Cir. 1998) (noting that this court may review a sentencing court's refusal to depart downward where it is based on the court's conclusion that it lacks discretion to do so). We review de novo the legal conclusions underlying the district court's refusal to depart downward. Id. at 1283.

### III

Application Note 5 to § 2L1.2 provides that

> [a]ggravated felonies that trigger [the sixteen-level enhancement] vary widely. If [an aggravated felony conviction triggers the sixteen-level enhancement], and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

U.S. Sentencing Guidelines Manual § 2L1.2 commentary at n.5 (1999) (emphasis added). Marquez was ineligible for a downward departure under Application Note 5 because he was sentenced to a term of three years' imprisonment for his underlying aggravated felony. Under the law of this circuit, the fact that Marquez's three-year sentence was suspended is irrelevant. See United States v. Chavez-Valenzuela, 170 F.3d 1038, 1039-40 (10th Cir. 1999) (holding that "the

term of imprisonment" for purposes of Application Note 5 is the sentence imposed by the state court and that it shall not be decreased to reflect a suspension of any part of the sentence).

We do not consider here the merits of Marquez's argument that this court should revisit this issue and overrule Chavez-Valenzuela. A three-judge panel may not overrule circuit precedent. See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998). "The proper avenue for raising th[is] issue[] lies in a petition for en banc review." United States v. Splawn, 963 F.2d 295, 297 (10th Cir. 1992).

We do, however, consider Marquez's argument that the district court erred in failing to recognize its discretion to depart downward under § 5K2.0. Under § 5K2.0,

> the sentencing court may impose a sentence outside the range established by the applicable guidelines, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

U.S. Sentencing Guidelines Manual § 5K2.0 (1999) (quoting 18 U.S.C. § 3553 (b)). Before a departure from the applicable Guideline is permitted under § 5K2.0, however, "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." Koon v. United States, 518 U.S. 81, 98 (1996). Where the factor in issue is one already taken into

account by the applicable Guideline and adjustments, departure from the Guideline is permissible only if that factor is present in a manner or degree unusual enough to distinguish the case from the "heartland" of cases covered by the Guideline.  See § 5K2.0.

The spectrum of aggravated felonies that may lead to a sixteen-level enhancement extends from the gravest of offenses to relatively minor ones.  See § 2L1.2 commentary at n.1 (1999) (incorporating by reference the definition of "aggravated felony" found at 8 U.S.C. § 1101(a)(43)).  In cases where the aggravated felony is relatively minor, the one-size-fits-all, sixteen-level enhancement of § 2L1.2(b)(1)(A) may result in a disproportionately harsh sentence.  It is clear on the face of Application Note 5 that the Sentencing Commission is aware of this risk.  See § 2L1.2 commentary at n.5.  ("Aggravated felonies that trigger the [sixteen-level enhancement] vary widely.").

Indeed, the Sentencing Commission accounted for this risk to the extent it deemed fit in Application Note 5, which encourages downward departures based on the lack of seriousness of the underlying aggravated felony.  The Commission set forth in Application Note 5 three criteria to be used in identifying those defendants who may be at risk of receiving a disproportionately harsh sentence: "(A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of

imprisonment imposed for such offense did not exceed one year." § 2L1.2 commentary at n.5 (1999). As noted above, Marquez does not fall within the class of defendants delineated in Application Note 5 because he was sentenced to three years' imprisonment for his aggravated felony.

A downward departure under § 5K2.0 would only be permissible if Marquez's case could be said to fall outside of the "heartland" of cases of unlawful reentry subsequent to an aggravated felony. See Koon, 518 U.S. at 98. We are persuaded that the Sentencing Commission, in promulgating Application Note 5, implicitly defined the "heartland" of such cases to be all those not falling within the class delineated therein. Because Marquez's case therefore was within the heartland of § 2L1.2(b)(1)(A), we hold that the district court did not err in concluding that it lacked discretion to depart under § 5K2.0.

Our holding is consistent with a recent decision of the Second Circuit Court of Appeals that squarely confronted the same question. See United States v. Tappin, 205 F.3d 536 (2nd Cir. 2000). Dennis Tappin had two aggravated felony convictions prior to his unlawful reentry. See id. at 539. He conceded that he therefore failed to satisfy one of the three criteria of Application Note 5. Id. He argued that the district court nevertheless had discretion to grant a downward departure on the basis of the lack of seriousness of his aggravated felonies because his case was sufficiently unusual to fall outside the heartland of unlawful

reentry cases. Id. at 539-41. The court rejected this argument, reasoning that,

> [t]he Sentencing Commission stated explicitly that departure on the ground of seriousness of the predicate aggravated felony may be appropriate when a defendant meets all three enumerated criteria in [Application Note 5]. By necessary implication, therefore, the Sentencing Commission intended that all other cases . . . should be treated as within the heartland of illegal reentry cases under § 2L1.2(b)(1)(A), and that downward departure in such cases on the ground of seriousness of the predicated aggravated felony would be improper.

Id. at 540-41. The court affirmed the district court's refusal to depart downward. Id. at 543.

We agree with the Second Circuit that a contrary conclusion would render Application Note 5 "effectively meaningless." Id. at 541. To hold otherwise would also second-guess the conscious policy choices of Congress and the Sentencing Commission, an activity in which we are not at liberty to engage. See Koon, 518 U.S. at 92-93 (citing 18 U.S.C. § 3553(b)). We recognize, however, as the Second Circuit did in Tappin, that our holding may be in tension with decisions of three other circuits. See id. at 541 n.7 (citing United States v. Alfaro-Zayas, 196 F.3d 1338, 1342-43 (11th Cir. 1999); United States v. Sanchez-Rodriguez, 161 F.3d 556, 562-63 n.12 (9th Cir. 1998) (en banc); United States v. Diaz-Diaz, 135 F.3d 572, 579-82 (8th Cir. 1998)).

None of these circuits squarely held that a downward departure on the basis of the lack of seriousness of the underlying aggravated felony is permissible

under § 5K2.0 where the defendant failed to qualify for a downward departure under Application Note 5.  See Alfaro-Zayas, 196 F.3d at 1342-44 (affirming the district court's conclusion that it lacked discretion to depart downward where the defendant did not satisfy the three criteria of Application Note 5 and no other findings in the record suggested the case fell outside the heartland of § 2L1.2(b)(1)(A)); Sanchez-Rodriguez, 161 F.3d at 561-63 (where the unlawful reentry occurred prior to the 1997 amendment of § 2L1.2 to include the three criteria of Application Note 5, concluding "without reference to the new amendment" that the district court did not abuse its discretion in granting a downward departure on the basis of the seriousness of the aggravated felony, an "unmentioned factor" in the Guideline); Diaz-Diaz, 135 F.3d at 580-82 (in a case where the defendant did not satisfy the three criteria of Application Note 5 but his reentry preceded the 1997 amendment of § 2L1.2, holding that the district court did not abuse its discretion in granting a downward departure under § 5K2.0 on the basis of the seriousness of the aggravated felony).  To the extent that our holding is at odds with dicta in those decisions, we decline to follow them.

AFFIRMED.