In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3640

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

ROBERTO PALOMINO-RIVERA,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 00 CR 371--Suzanne B. Conlon, Judge.

ARGUED MARCH 28, 2001--DECIDED July 20, 2001

  Before RIPPLE, KANNE and EVANS, Circuit
Judges.

  RIPPLE, Circuit Judge.  Roberto Palomino-
Rivera was indicted on one count of being
present in the United States without
authorization after having been deported
previously, in violation of 8 U.S.C. sec.
1326. He pleaded guilty. The Government
recommended that Mr. Palomino-Rivera
receive a sixteen-level increase in
offense level pursuant to United States
Sentencing Guideline sec. 2L1.2(b)(1)(A)
because he had been deported after being
convicted of an aggravated felony. Mr.
Palomino-Rivera filed a motion for a
downward departure on the ground that the
sixteen-level increase overstated the
seriousness of the underlying crime. The
district court agreed in part and granted
Mr. Palomino-Rivera an eight-level
downward departure. The Government now
appeals. It submits that the district
court erred when it granted the
departure. For the reasons set forth in
the following opinion, we reverse the
decision of the district court and remand
the case for resentencing.

I
BACKGROUND

  On May 9, 2000, Mr. Palomino-Rivera was
arrested at O'Hare International Airport
for theft and disorderly conduct. A
citizen of Peru, he was, at the time of

his arrest, in the United States illegally. Local authorities therefore turned him over to the Immigration and Naturalization Service.

On June 14, 2000, Mr. Palomino-Rivera was indicted on one count of being present in the United States without authorization after having been deported previously. Prior to the date of his arrest, he had been deported twice and, on another occasion, had been permitted to return voluntarily to Peru./1 With respect to the present offense, he initially entered a plea of not guilty and then withdrew it and pleaded guilty.

Following Mr. Palomino-Rivera's guilty plea, the United States Probation Office prepared a pre-sentence investigation report ("PSR") recommending a Sentencing Guidelines range of 46 to 57 months' imprisonment. In calculating that sentence, the PSR began with a base offense level of eight for unlawful entry into the United States, see U.S.S.G. sec. 2L1.2(a), and then applied a sixteen-level enhancement, see U.S.S.G. sec. 2L1.2(b)(1)(A). This latter provision authorizes such an augmentation for defendants who previously have been deported after a conviction for an aggravated felony. According to the PSR, Mr. Palomino-Rivera had been convicted of an aggravated felony--theft by taking on September 21, 1988--and had received a three-year term of imprisonment. The PSR further recommended a three-level reduction for acceptance of responsibility; it also assigned him a Criminal History Category of III.

On September 1, 2000, Mr. Palomino-Rivera filed a motion for a downward departure of ten levels. Relying on Application Note 5 to U.S.S.G. sec. 2L1.2(b)(1)(A) and United States v. Cruz-Guevara, 209 F.3d 644 (7th Cir. 2000), he argued that he met the requirements of Application Note 5 and that the sixteen-point enhancement "overstate[d] the seriousness of the underlying crime." R.18 at 6.

At the time of sentencing, Mr. Palomino-Rivera again sought a ten-level departure on the basis of Application Note 5. He argued that the underlying felony--theft by taking--was "barely" a felony and, therefore, should not be treated the same

as other, more serious aggravated felonies. Sent. Tr. at 14. The district court agreed and granted the motion in part, awarding Mr. Palomino-Rivera an eight-level departure. In the court's view, the departure was warranted because the felony used to enhance Mr. Palomino-Rivera's sentence was a "borderline felony" not "adequately considered by the Commission, whether or not application note 5 applies." Id. at 27. Further, the court saw no rational basis for "lumping [theft by taking] together with treason, murder and rape." Id.

Taking into account the adjusted offense level, the district court sentenced Mr. Palomino-Rivera to a term of 24 months' imprisonment, the high end of the 18-24 months authorized by the Guidelines. The Government now appeals.

II

ANALYSIS

We review a district court's decision to depart for an abuse of discretion. See Koon v. United States, 518 U.S. 81, 99-100 (1996). In doing so, we accept the district court's findings of fact supporting the departure unless clearly erroneous. See United States v. Gee, 226 F.3d 885, 900 (7th Cir. 2000). A district court "by definition abuses its discretion when it makes an error of law." Koon, 518 U.S. at 100.

A. Eight-Level Departure

Under U.S.S.G. sec. 2L1.2, the sentence of a defendant convicted of unlawfully entering or remaining in the United States can be increased if that defendant (1) previously was deported after a criminal conviction or (2) unlawfully remained in the United States following a removal order. See U.S.S.G. sec. 2L1.2(b)(1). If the underlying conviction was for an aggravated felony, the increase is by sixteen levels. See U.S.S.G. sec. 2L1.2(b)(1)(A). Application Note 5, however, provides a mechanism whereby a district court can mitigate the severity of the sixteen-level increase in certain cases. A downward departure may be warranted, based on the seriousness of the aggravated felony at issue, if "(A) the defendant has previously been convicted of only one felony offense; (B)

such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year." U.S.S.G. sec. 2L1.2, Application Note 5./2

The parties disagree about the degree of discretion available to the sentencing court when faced with the sort of situation contemplated by Application Note 5. In the Government's view, a defendant can only receive a departure if all three conditions set forth in the note are met. Mr. Palomino-Rivera, however, argues that, even if he fails to satisfy each of the criteria in the application note, the district court nevertheless had discretion under Koon v. United States, 518 U.S. 81 (1996), to grant a downward departure based on its assessment of the seriousness of the predicate aggravated felony. Nothing in Note 5 forbids, he submits, an individualized consideration of factors such as the underlying facts of the prior offense or actual time served.

1.

A sentencing court may depart and "impose a sentence outside the range established by the applicable guidelines, if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. sec. 5K2.0 (quoting 18 U.S.C. sec. 3553(b)). Before such a departure is permitted, however, "certain aspects of the case must be found unusual enough for it to fall outside the heartland of cases in the Guideline." Koon, 518 U.S. at 98. In the absence of a "characteristic or circumstance that distinguishes a case as sufficiently atypical to warrant a sentence different from that called for under the guidelines, a sentence outside the guideline range is not authorized." U.S.S.G. sec. 5K2.0, commentary. Mr. Palomino-Rivera submits that he presents an atypical case that was not adequately considered by the Sentencing Commission ("Commission"). The district court agreed and, in granting the downward departure, explained that it did not "think this kind of a borderline felony was

adequately considered by the Commission." Sent. Tr. at 27.

We respectfully disagree with the district court and conclude that the Commission fully considered the issue. There can be no question that the Commission was aware that the blanket sixteen-level enhancement may work a disproportionately harsh sentence in cases in which the aggravated felony is relatively minor. Indeed, Application Note 5 specifically states that "[a]ggravated felonies that trigger the [sixteen-level enhancement] vary widely." Nevertheless, the Commission limited the grounds of departure to the specific circumstances detailed in the note. Under these circumstances, we cannot say that a departure tied to the severity of the aggravated felony is a mitigating factor not taken into consideration by the Guidelines.

A downward departure would only be permissible if Mr. Palomino-Rivera's case fell outside the heartland of cases of unlawful reentry subsequent to an aggravated felony. See Koon, 518 U.S. at 98. In promulgating Application Note 5, the Commission defined the heartland of sec. 2L1.2 by exclusion; a downward departure from the sixteen-point enhancement is authorized only if the defendant satisfies all three criteria enumerated in Application Note 5. This conclusion mirrors that reached by other circuits on the identical issue. See United States v. Marquez-Gallegos, 217 F.3d 1267, 1270-71 (10th Cir.), cert. denied, 121 S. Ct. 246 (2000); United States v. Yanez-Huerta, 207 F.3d 746, 750 (5th Cir.), cert. denied, 121 S. Ct. 432 (2000); United States v. Tappin, 205 F.3d 536, 540-41 (2d Cir.), cert. denied, 121 S. Ct. 260 (2000); see also United States v. McKenzie, 193 F.3d 740, 742 (3d Cir. 1999)./3

We find persuasive the reasoning of our colleagues in the Second Circuit in Tappin:

The Sentencing Commission stated explicitly that departure on the ground of seriousness of the predicate aggravated felony may be appropriate when a defendant meets all three enumerated criteria in [Application Note 5]. By necessary implication, therefore, the

Sentencing Commission intended that all other cases . . . should be treated as within the heartland of illegal reentry cases under sec. 2L1.2(b)(1)(A), and that downward departure in such cases on the ground of seriousness of the predicate aggravated felony would be improper.

Tappin, 205 F.3d at 540-41. Any other interpretation would render the application note "effectively meaningless." Id. at 541. We shall not "second-guess the conscious policy choices of Congress and the Sentencing Commission, an activity in which we are not at liberty to engage." Marquez-Gallegos, 217 F.3d at 1271.

In sum, the Commission did take into account the varying severities of aggravated felonies when it promulgated Application Note 5. A defendant whose record does not satisfy all three criteria enumerated in the note therefore cannot be considered atypical and consequently outside the heartland of illegal reentry cases.

2.

We now turn to the specific facts of Mr. Palomino-Rivera's case. According to the Government, Mr. Palomino-Rivera does not satisfy two of the three criteria set forth in Application Note 5; he has at least four prior felony convictions, and he received a prison term of three years on a theft by taking conviction in 1988 in Georgia. Mr. Palomino-Rivera argues (1) that the district court only found that he committed one prior aggravated felony, theft by taking and (2) it is questionable whether that offense itself constitutes an aggravated felony./4

If Mr. Palomino-Rivera has been convicted of more than one aggravated felony, or if he did receive a prison term of more than a year for a single felony, he is ineligible for a downward departure pursuant to Application Note 5./5 Upon examination of the record, however, we note that, although the district court assumed that Mr. Palomino-Rivera had been convicted of at least one aggravated felony, it never made an explicit finding to that effect. A sentencing court "must clearly explain the reasons for the departure and make any necessary factual findings as

required by the guidelines." United States v. Eiselt, 988 F.2d 677, 680 (7th Cir. 1993). Because the record is deficient in this regard, on remand, the district court must (1) make the required factual findings on the record and (2) resentence Mr. Palomino-Rivera in accordance with this opinion.

B.  Apprendi

Mr. Palomino-Rivera provides an alternative basis for affirming the district court's sentence. He claims that the two-year sentence he received is the maximum sentence available, under the rule announced in Apprendi v. New Jersey, 530 U.S. 466 (2000). This argument is without merit.

In general, aliens who return to the United States after deportation and without permission are subject to two years' incarceration. See 8 U.S.C. sec. 1326(a). An increased prison term of up to twenty years also can be imposed for aliens "whose [prior] removal was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. sec. 1326(b)(2). Mr. Palomino-Rivera argues that he cannot receive a sentence of more than two years because the indictment did not charge, and the factfinder did not find beyond a reasonable doubt, that he previously had been convicted of an aggravated felony.

As the Government points out, Mr. Palomino-Rivera's position conflicts with the holding of Almendarez-Torres v. United States, 523 U.S. 224 (1998). The Supreme Court specifically addressed in Almendarez-Torres whether the provisions of sec. 1326(b)(2) set forth a sentencing factor or a separate element of a sec. 1326 charge. The Court concluded that sec. 1326(b)(2) is a "penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that [Section 1326(b)(2)] mentions, an earlier conviction, in the indictment." Id. at 226-27. This decision, therefore, forecloses Mr. Palomino-Rivera's position here.

Although Mr. Palomino-Rivera maintains

that the Supreme Court's decision in Apprendi has undermined the reasoning of Almendarez-Torres, we note that Apprendi explicitly states that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Thus, Apprendi left the rule of Almendarez-Torres intact.

Conclusion

   There is no Apprendi violation in this case. The district court did, however, misapprehend its authority to award Mr. Palomino-Rivera an eight-level departure if he did not meet all the criteria of Application Note 5. Accordingly, the judgment of the district court is reversed, and the case is remanded for further factfinding and resentencing in conformity with this opinion.

REVERSED and REMANDED

FOOTNOTES

/1 On December 23, 1992, in New Orleans, Louisiana, Mr. Palomino-Rivera was ordered deported and removed from the United States to Peru. He was formally removed from the United States on February 10, 1993, from Miami, Florida. Several months later, on September 21, 1993, he was ordered deported from Miami, and the next day he was formally removed from the United States. Finally, on March 27, 1997, Mr. Palomino-Rivera was stopped by the United States Border Patrol in Miami while attempting to enter the United States. He was ordered to return voluntarily to Peru by April 1997.

/2 sec. 2L1.2 provides in full:

(a)  Base Offense Level: 8

(b)  Specific Offense Characteristic

(1) If the defendant previously was deported after a criminal conviction, or if the defendant unlawfully remained in the United States following a removal order issued after a criminal conviction, increase as follows (if more than one applies, use the greater):

(A) If the conviction was for an aggravated felony, increase by 16 levels.

(B) If the conviction was for (i) any other

felony, or (ii) three or more misdemeanor crimes of violence or misdemeanor controlled substance offenses, increase by 4 levels.

More specifically, Application Note 5 provides that:
Aggravated felonies that trigger the adjustment from subsection (b)(1)(A) vary widely. If subsection (b)(1)(A) applies, and (A) the defendant has previously been convicted of only one felony offense; (B) such offense was not a crime of violence or firearms offense; and (C) the term of imprisonment imposed for such offense did not exceed one year, a downward departure may be warranted based on the seriousness of the aggravated felony.

/3 We recognize that our conclusion may be in tension with the decisions of other circuits. See United States v. Alfaro-Zayas, 196 F.3d 1338, 1342-44 (11th Cir. 1999); United States v. Sanchez-Rodriguez, 161 F.3d 556, 562-63 & n.12 (9th Cir. 1998) (en banc); United States v. Diaz-Diaz, 135 F.3d 572, 579-82 (8th Cir. 1998). To the extent our holding conflicts with these decisions, we decline to follow them.

/4 Mr. Palomino-Rivera also submits that an ambiguity in the statute defining an aggravated felony, 8 U.S.C. sec. 1101(a)(43)(G), suggests that only a state felony that requires the imposition of a mandatory minimum sentence can be the basis of an enhancement under U.S.S.G. sec. 2L1.2. We believe that such a reading is entirely implausible. If Mr. Palomino-Rivera's analysis were correct, it would undermine substantially the need for Application Note 5; yet the Commission, concerned about the wide variety of situations that fall within the ambit of the "aggravated felony" definition, promulgated the note to ensure the needed flexibility in the application of the aggravated felony provision of the Guidelines.

/5 Mr. Palomino-Rivera urges us to consider the fact that he only served nine months of the three-year sentence on the theft by taking conviction. That fact is irrelevant to our analysis. See 8 U.S.C. sec. 1101(a)(48)(B) ("Any reference to a term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law regardless of any suspension of the imposition or execution of that imprisonment or sentence in whole or in part.") (emphasis supplied).